UNITED THRIFT PLAN, INC., Plaintiff, *v.* MARION GOLDSTEIN, Defendant.

UNITED THRIFT PLAN, INC., Plaintiff, *v.* IRVING GOLDSTEIN, Defendant.

Municipal Court of New York, Borough of Manhattan, Fourth District, May 9, 1929.

*Louis Kaplan,* for the plaintiff.

*Nathaniel H. Kramer,* for the defendants.

CHILVERS, J. In each of these actions the plaintiff sues to recover the balance due " for insurance premiums advanced by the plaintiff at the special instance and request of the defendant under a written contract."

The contract in each case is between the plaintiff, which is an insurance broker, and a trust company and the defendant. The defendant, on its part, turns over to the plaintiff a check to the order of the trust company for the establishing of a trust fund, and agrees to make deposits of similar amounts monthly into the trust account. The trust company, on its part, agrees to comply with the terms of the trust thus established, which are specified. The plaintiff agrees to one thing only, to advance for the defendant one year's premium on a policy of life insurance. For this it is to be reimbursed, plus a " thrift fee," out of the trust account when the aggregate deposits therein will be sufficient therefor, and it is one of the terms of the trust that the trustee is directed to make this payment. In the event that the deposits do not aggregate what the plaintiff has advanced for the defendant plus the " thrift fee," the trustee is authorized by the defendant in this agreement to pay over whatever is in the trust account, in which event the defendant agrees to pay to the plaintiff the difference between the amount thus turned over and the sum advanced by the plaintiff for the premium plus the " thrift fee." The plaintiff is, therefore, assured of receiving the amount that it advanced plus the " thrift fee," either out of the trust fund established for the benefit of the defendant or from the defendant directly. The monthly deposits into the trust fund are in such amount as to aggregate the premium plus the " thrift fee " in less than a year.

In the case of the defendant Marion Goldstein, the premium advanced by the plaintiff amounted to one hundred and thirty-nine dollars and three cents, on which the " thrift fee " was twenty-four dollars. It seems that by a supplemental agreement the plaintiff was to advance an additional fifty dollars on an accident policy for her on which there was no " thrift fee." In the contract with the defendant Irving Goldstein, the amount of the premium was ninety-nine dollars and fifty cents, and the " thrift fee " was twenty dollars.

The plaintiff claims from defendant Marion Goldstein one hundred

and eighty-nine dollars and thirteen cents advanced for the premiums, plus twenty-four dollars thrift fee, plus one dollar and eighty-nine cents interest, less thirty dollars received from the defendant (the first deposit to establish the trust account), making one hundred and eighty-four dollars and ninety-two cents. It claims from the defendant Irving Goldstein ninety-nine dollars and fifty cents, the amount of the premium advanced by it for him, less twenty-five dollars (the first deposit), plus interest, making eighty dollars and forty-eight cents.

The defendant Irving Goldstein is an infant and has pleaded infancy as a defense. It is for that reason that the plaintiff on the trial did not claim the thrift fee, but relied on a claim for money paid out for the benefit of this infant for a necessary. The trouble is, however, that this money was paid out under a written contract, as the indorsement on the summons shows, which express contract was offered and admitted in evidence. The plaintiff says that, under section 55 of the Insurance Law, an infant is liable even on express contracts. But, under that section, an infant is liable on a contract " of insurance," which is not the kind of contract that we have here. The contract in this case is one for a loan, for an advance to be made by the plaintiff for which the plaintiff is to be repaid, plus the thrift fee, either out of a fund accumulated by the infant with a trust company or directly by him in the event that such fund is insufficient. Nor is there proof that this particular insurance was necessary for the infant, or how much the plaintiff is actually out of pocket. The plaintiff is an insurance broker, and the exact amount that it got back from the insurance company as commission on this transaction was not stated definitely on the trial, although a witness for the plaintiff said that he thought it was half the premium. And it seems that the policy in each case was canceled shortly after this contract was made, so that a substantial portion of the premium may have been returned, and the amount of the first deposit may have covered the actual earned insurance.

I am not satisfied from the testimony that the conditions mentioned in paragraph 13 of the agreement in each case were complied with. A witness for the plaintiff, in testifying as to the amount due from the defendant, mentioned the amount due from the defendant, mentioned what the premium was, etc., and deducted from that the deposit " received from the defendant." Each agreement provides that the defendant is to pay to the plaintiff the difference between the amount of the insurance premium advanced by it plus the " thrift fee " and the trust balance, in the event only that the defendant has not kept up his deposits with

the trust company and the trust company has turned over to the plaintiff the balance then in its hands after such default. No one appeared at the trial who could speak with knowledge on such default, and no testimony was offered as to whether further deposits were made with the trust company. The testimony that the plaintiff did not receive any further payments or deposits is not important; the plaintiff was to receive only the first check that was to be turned over to the trust company to start the fund. If a passbook was actually issued and the trust fund established and defaults in further deposits made, and thereupon the trust balance turned over to the plaintiff, that could by very direct proof have been established. Giving the defendant credit for the deposit " received from the defendant " is not an indication that the passbook was issued by the trust company or that the plaintiff received the amount from the trust company, thus making the defendant liable for the deficiency.

I am inclined also to believe that these agreements are void for usury as between the plaintiff and the defendants. The plaintiff advances the first year's premium for the defendant on the absolute promise of the defendant to pay either out of a trust fund or directly. For this advance the plaintiff receives a " thrift fee." In the case of the Irving Goldstein contract it was to receive twenty dollars for advancing ninety-nine dollars and fifty cents, for example. The plaintiff is an insurance broker, to be sure, but for placing the insurance it gets its commission from the insurance company, as was testified, perhaps half of the sum advanced. I cannot find in these agreements — and it certainly did not appear on the trial — that the plaintiff did anything or was to do anything of any value to earn this money except the making of the advance. The courts of this State do not countenance a subterfuge for exacting a usurious rate, and such exaction cannot hide behind the name of " thrift fee." A scheme, such as we have here, intended to appeal to those who cannot afford to pay a whole premium in advance and yet are induced to take out insurance as a means for protection and consistent saving and thrift, defeats its purpose when it charges such persons say twenty dollars to advance for them ninety-nine dollars and fifty cents, as provided in one of these contracts.

Judgment for defendant in both cases.