EQUITY SERVICE CORPORATION, Respondent, *v.* MILTON AGULL, Appellant.*

First Department, February 26, 1937.

*Jacob H. Livingston* of counsel [*Arthur Rosenzweig,* attorney], for the appellant.

*David H. Slade* of counsel [*Samuel Firestone,* attorney], for the respondent.

*Jacob H. Livingston* of counsel [*Livingston & Livingston,* attorneys], for Personal Finance Company of New York, as *amicus curiæ.*

*Paul R. Taylor* of counsel, for Louis H. Pink, Superintendent of Insurance, as *amicus curiæ.*

*Jackson S. Hutto* of counsel, for Banking Department of the State of New York, as *amicus curiæ.*

*Sewell T. Tyng* of counsel [*Searle, James & Tyng,* attorneys], for Household Finance Corporation, as *amicus curiæ.*

*John F. X. McGohey* of counsel [*Colin McLennan* with him on the brief; *John J. Bennett, Jr., Attorney-General of the State of New York*], as *amicus curiæ.*

TOWNLEY, J.   Plaintiff brought this action to recover a balance claimed to be due under a loan agreement entered into between its assignor, Ritter (trading under the name of Atlas Auto Finance Company) and defendant.   Defendant borrowed $200 from Ritter on the security of his automobile and agreed to repay $260 in installments over a period of ten months.   There was executed in

connection with the loan a hazard agreement under the terms of which defendant could satisfy the loan by surrendering his car even though damaged or destroyed by fire, accident or other causes enumerated in the agreement. Ritter had no license from the Banking Department under article IX of the Banking Law nor did he have any license from the Insurance Department.

Defendant claims that the agreements contained in the hazard agreement and chattel mortgage violate the statutes against usury, the Insurance Law and the Banking Law. The only defense pleaded was that of usury. On the trial the court injected into the case the claim that the hazard agreement was really an insurance contract and void because plaintiff's assignor had no license. The decision of the trial court was based on this conclusion and judgment was entered in favor of the defendant. The pleaded defense of usury was not fully litigated in that court and was not determined by the judgment entered. The Appellate Term held that the contract was not one of insurance and that the defense of usury was not established. These were the only questions argued in that court and we agree with the conclusion reached with regard thereto. The contract stated here was plainly not one of insurance. It was a contract for the loan of money under which the lender by the terms of the hazard agreement assumed the risk of the loss of the automobile which he agreed under certain conditions to accept in payment of the loan. The essentials of a contract of insurance are nowhere to be found in the agreement.

The defense of usury was also not established by the defendant. By the terms of the hazard agreement, the plaintiff's assignor assumed a risk which was real and substantial. Defendant was given the privilege of settling his debt by the return of the automobile in a condition which would render it of little or no value. That the risks enumerated in the agreement were of a character which frequently occur in connection with the operation of an automobile is apparent.

*Prima facie* there was a risk of the principal advanced by this contract. It has always been the law that if the payment of the principal of the debt depends upon any *bona fide* contingency, there can be no usury in the transaction. The Court of Appeals in *Hartley* v. *Eagle Insurance Co.* (222 N. Y. 178, 184) states the rule as follows: " I am of the opinion, therefore, that an agreement to pay an amount which may be more or less than the legal interest, depending upon a reasonable contingency, is not *ipso facto* usurious, because of the possibility that more than the legal interest will be paid. * * * Such arrangements, however, will not be upheld in any case where the purpose is to evade the statutes against

usury, no matter what form the transaction may take. (*Meaker* v. *Fiero*, 145 N. Y. 165; *Quackenbos* v. *Sayer*, 62 N. Y. 344; *Birdsall* v. *Patterson*, 51 N. Y. 43.) " To the same effect see *Pomeroy* v. *Ainsworth* (22 Barb. 118, 124); *Rowe* v. *Gunson* (25 How. Pr. 360); *Brown* v. *Robinson* (224 N. Y. 301, 314 *et seq.*).

The transaction here shown was not *ipso facto* usurious and that character could only be given to it by proof showing that the risk assumed was so unsubstantial as to bear no reasonable relation to the amount charged. The question ultimately presented becomes one of fact. Here there was no proof offered by defendant on this question. The court erroneously ruled that on this issue the plaintiff had the burden of proof. The plaintiff then offered proof of experts as to the value of the risk assumed. This proof was excluded. There was, therefore, nothing in the record to sustain the defendant's claim that this agreement was a mere cloak for usury and nothing to overcome the apparent validity of the arrangement.

Upon the appeal to this court for the first time the defendant asserted the claim that the agreement violates section 357 of the Banking Law in that the defendant contracted to receive compensation for services rendered in connection with the loan. This being a matter of public policy the court has decided to entertain the objection although it is first raised on appeal. (*Doucet* v. *Massachusetts Bonding & Insurance Co.*, 180 App. Div. 599.) A fair reading of the agreement plainly indicates that the sixty-dollar excess over the amount of the original loan was in part at least to compensate for " making an inspection and appraisal of a certain automobile hereinafter called the property, described in a mortgage of even date, and searching the records to determine and discover any judgments, charges, liens and encumbrances, making an investigation of the credit standing of the mortgagor and co-makers or guarantors, preparing all necessary papers and documents, notarizing and recording or filing said papers."

Payment for such services cannot be required by a licensee under the Banking Law, section 352, which so far as material, reads: " Restrictions on loans of three hundred dollars or less; interest; other charges. * * * In addition to the maximum rate or amount of interest, consideration, or charges above specified, no further or other charge or amount whatsoever for any examination, service, brokerage, commission, expense, fee, or bonus or other thing or otherwise shall be directly or indirectly charged, contracted for, or received, except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for filing, recording, or releasing in any public office any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter."

Section 357 of the Banking Law which restricts the charges which may be made by an unlicensed lender reads:

" Restrictions on loans of three hundred dollars or less by non-licensees, interest; other charges; when unenforceable.  No person * * * except as authorized by this article, shall * * * contract for, or receive any interest, discount, or consideration greater than the lender would be permitted by law to charge if he were not a licensee hereunder  * * *.

" The foregoing prohibition shall apply to any person,  co-partnership, association, or corporation who or which, by any device, subterfuge, or pretense whatsoever shall charge, *contract for*, or receive greater interest, consideration, or *charge, than is authorized by this article* for any such loan, use, or forbearance of money, goods, or things in action or for any such loan, use, or sale of credit." (Italics ours.)

The meaning of section 357 is that an unlicensed lender cannot make any charge for services which is not allowed a lender under the provisions of section 352.   The reason for this restriction as to unlicensed lenders is clear.   The general purpose of the statute is to protect poor people, whose necessities make them helpless, against the risk of having the rate authorized by the statute increased by further charges under the guise of compensation for services. This is prohibited in the case of licensees by the provisions of section 352 and a fair construction of section 357 leads to the same conclusion.

This construction finds support in the decision of the Court of Appeals in *London Realty Co.* v. *Riordan* (207 N. Y. 264).   In that case the then section 312 of the Banking Law permitted corporations organized under the law to charge not exceeding two dollars for examination of property.   The then section 314 of the Banking Law forbade any person not licensed to charge more than the legal rate and the prohibition was made applicable to any person who by " pretense of charging for his services or otherwise, seeks to obtain a larger compensation in any case hereinbefore provided for."   The unlicensed lender in that case had charged ten dollars for examination and the question was presented whether the above-quoted language prohibited all charges for services other than those allowed to a licensed lender.   While the language in that case is not clear, the court held that the purpose of the Legislature was to put both licensed and unlicensed lenders on a parity so far as service charges in connection with small loans were concerned.   The court in its opinion said:

" The exaction of the ten dollars for expenses was a charge for services whether regarded as for the services of the lender or for

those of its attorneys, and to fall within the inhibition of the act it is not necessary that it should be exacted as interest or as a cover for interest. It is sufficient that it is exacted as compensation. * * * I think that the case fell directly within the terms of the statute, not necessarily as a device for excessive interest, but as a charge which, under the statute, the lender is forbidden to exact either in its own favor or in favor of any one else. * * *

" The statute meant that in no case should the borrower be compelled to pay on any pretext whatever more than the 2% interest per month and the one or two dollars for expenses. The object of the enactment of section 314 was to prohibit any person or corporation, other than those specially organized under the provisions of the Banking Act, from charging the borrower any other sum than 6% interest. As it would be unreasonable to construe section 312 as tolerating the exaction from the borrower of the payment to any other person by way of compensation for expenses of a greater sum than the prescribed fee, so it would be equally unreasonable to construe section 314 as tolerating a charge for the services of any one, whether the lender or a third person."

The agreement herein *contracts for a charge* not permitted by the statute and this charge under the provisions of section 358 of the Banking Law makes the contract void and unenforcible.

For the reasons herein stated, the determination of the Appellate Term should be reversed with costs in this court and in the Appellate Term, and the judgment of the Municipal Court affirmed.

MARTIN, P. J., GLENNON and UNTERMYER, JJ., concur.

DORE, J. (concurring). In my opinion the contract in question is an obvious device and subterfuge to evade the usury laws. In this case the money lender charged $60 for a loan of $200 for a period of ten months, *i. e.*, approximately sixty-five per cent per annum computed on unpaid balances; and also provided for other disbursements which were deducted from the loan, and in addition attempted to collect attorney's fees of $19.50. These extortionate and oppressive charges for a small loan are clearly devices to evade the usury laws and are not made legal as is claimed by the terms of the so-called " hazard agreement."

If the mere form of a contract of this sort is to be controlling, the statutes against usury are unenforcible. Not the mere form but the intent, as indicated by all the facts and circumstances, should govern. Here in plain fact within the intent of the parties the personal obligation of the borrower was the real and primary source for satisfying the loan in spite of the language of the " hazard agreement." The hazards when scrutinized prove to be technical

and unsubstantial. In the first place this agreement was not signed or accepted in writing by the lender whom it is supposed to burden with real hazards. It was signed only by the borrower and under the conditions specified in the document itself, assuming it could ever be enforced against the lender, it is clear that there is no actual or real likelihood that the borrower will escape personal responsibility which is carefully provided for in numerous clauses and conditions of the agreement. As was said by the United States Supreme Court in *DeWolf* v. *Johnson* (10 Wheat. 367, 385): " Usury is a moral taint wherever it exists, and no subterfuge shall be permitted to conceal it from the eye of the law; this is the substance of all the cases, and they only vary as they follow the detours through which they have had to pursue the money lender."

Except as hereinabove indicated, I entirely agree with the opinion of the majority of the court and concur in the result.

Determination unanimously reversed, with costs in this court and in the Appellate Term, and the judgment of the Municipal Court affirmed.