**NATIONAL EQUIPMENT RENTAL, LTD., Plaintiff-Appellant,**

v.

**T. G. STANLEY, doing business as Stanley's Drug Store, Defendant-Appellee.**

**No. 20, Docket 26014.**

United States Court of Appeals
Second Circuit.

Argued Sept. 29, 1960.

Decided Nov. 7, 1960.

Wilbur Silverman, Jamaica, N. Y. (Carlos L. Israels, Herbert R. Sokolsky, New York City, Paul H. Baris, on the brief), for plaintiff-appellant.

Raphael & Dorman, Brooklyn, N. Y. (Benjamin R. Raphael, Brooklyn, N. Y., Sidney S. Rubin, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and TUTTLE * and FRIENDLY, Circuit Judges.

TUTTLE, Circuit Judge.

National Equipment Rental, Ltd. appeals from a judgment based on a jury verdict, that its contract with Stanley was a usurious loan and thus unenforceable and not a lease of equipment.

---

* Of the Fifth Circuit, sitting by designation.

Under the New York General Business Law, McKinney's Consol.Laws, c. 20, §§ 370–373, conceded by both parties to control this transaction, it is illegal to receive more than 6% for the loan of money, and the lender who does so is forbidden the right to collect either principal or interest. In dealing with this transaction, which was cast in the form of a lease from National to Stanley, we need not resolve the somewhat confused state of the New York law, see Moldovan v. Julius Hebenstreit, Inc., 266 App.Div. 998, 44 N.Y.S.2d 736, and Benton v. Sun Industries, Inc., 277 App.Div. 46, 97 N.Y. S.2d 736 (both decided by the 1st Department), as to the showing that must be made to permit an inquiry into whether an advance of money or transfer of property in the form of a lease agreement is truly a loan of money. This is so because the parties agreed in open court that the jury might answer a special interrogatory rather than find a general verdict as to usury. That special question, submitted with the full consent of appellant was:

"Was the agreement between the parties in truth and in fact one for a loan of money or was it one for the leasing of equipment?" [1]

1. The full scope of the stipulation can be seen only by considering the colloquy between Court and Counsel:

"The Court: * * * But instead of asking the jury whether this was a usurious rate of interest, if we submitted the question I am suggesting, 'Was it a lease agreement or a loan agreement?' and they answer it, 'Loan agreement,' then the plaintiff would stipulate that a usurious rate of interest was charged—

"Mr. Silverman: [attorney for plaintiff] Yes, I will so stipulate—

"The Court: * * * On the other hand, if there is a motion for directed verdict and I should deny it and you move for judgment notwithstanding the verdict, then I can take the record in my own time, with briefs if need be, and if I feel that any of these questions shouldn't have been submitted to the jury, I am able to correct it and ultimately enter the right kind of judgment, without a retrial. Now, that's about what I am thinking about.

By submitting this form of verdict to the jury the plaintiff waived any issues except whether the transaction was in fact what it purported to be. Neither party objected to any part of the charge of the court which twice included a statement relating to the stipulation:

"* * * Plaintiff concedes that if in truth and in fact the parties did enter into a loan agreement, as defendant asserts, and did not enter into a lease as the plaintiff contends, then the agreement was usurious and unenforceable and defendant is entitled to win the suit. Because of that concession which the plaintiff made, it did not become necessary for either the defendant or the plaintiff to introduce in evidence facts which would show what the rate of return was.

"As I have previously stated, plaintiff has conceded that if the transaction was in truth and in fact a loan, then the rate of return was usurious and the action must be dismissed. But plaintiff denies that a loan of money was made, and asserts that the transaction was a bona fide lease of equipment. When usury is pleaded as a defense, the transaction must be judged by its real character,

"Mr. Silverman: I go along with what your Honor suggests.
* * * * *
"The Court: I think the question is whether or not it is a loan agreement or a lease agreement.

"Mr. Raphael: [attorney for defendant] Ultimately, yes.

"The Court: And if it is a loan agreement, then it is illegal, and I guess you would concede it is unenforceable.

"Mr. Silverman: That is correct, I concede that, if it be determined to be a loan agreement.

"The Court: I don't see how you can have any broader concession than that.
* * * * *
"Mr. Silverman: I concede that if it were a loan, it is unenforceable, as the Judge indicated. If it is a loan, I say it is more than six per cent and, as the Judge said, it doesn't make any difference whether it is a minute amount, we do not claim that it was an accident."

rather than by the form in which the parties have seen fit to cast it. The courts never let form obscure usury if in fact it exists, and devices resorted to for concealing usurious agreements are ineffective."

■ The transaction here resulted from a telephone call from Stanley to National. Stanley had a drug store in Hampton, S. C., in which he had some equipment between six and nine years old. He also had some new equipment purchased on cash and chattel mortgages from one Key. The time of the Key mortgage was only two years, and Stanley wanted longer time to pay out. He also wanted to buy additional equipment over a longer period. In addition he wished to get some money to do some renovating and construction work. Testimony that could be credited by the jury was that he telephoned to Rosen, president of National, and told him his problem and Rosen said he could "make me a loan, or finance my fixtures over a period of three or five years"; that Rosen said, "Stanley, this contract will be in the form of a rental or a lease basis due to the fact that it will save you income tax, it will be deductible from your income tax, which was very appealing to me." He further testified:

"I asked him what his setup was and then I asked him, I told him I had some equipment in the store that I had several years, I couldn't determine just how many years, six or eight, eight or nine years, and I had some alterations to make to the store building. And I asked him if he would lend me any money on those fixtures that I had owned, had paid for, and he said that he would. And he said that this would be as I said before, in a rental or lease form, over a period of five years at six per cent per annum, per month, and he said he was quite sure that could be arranged."

Rosen, who testified by deposition and died before trial, categorically denied any mention of a loan, stating that they spoke only in terms of National's buying the equipment and leasing it to Stanley.

It is undisputed that thereafter National paid out some $20,000 under the contract. Of this amount approximately $13,000 was paid to Key who cancelled the chattel mortgages on the equipment previously delivered to Stanley and shipped some new equipment. The balance of approximately $7,000 was paid to Stanley direct on account of old equipment which had been owned by him "six to eight, eight to nine years," which was merely listed in an inventory sent to National together with a figure apparently representing the cost to Stanley of each item some six to nine years earlier. National then prepared documents in the form of three separate leases covering the three separate categories of equipment and sent them to Stanley who executed them. Stanley submitted a financial statement showing a net worth of $200,000, and Stanley affixed plates to the equipment stating that it was leased from National. National made no inspection of the equipment and it acquired no record title to any of it, either by transfer of Key's chattel mortgage or by formal transfer of title from Stanley as to the old equipment owned by him.

The agreement called for payment of the entire $20,000, plus 6% interest added in, by monthly installments, which were heavily weighted in favor of the early years of the term. At the end of the five years Stanley had the option of continuing to rent the property at a flat 6% of the original outlay by National. There was no provision for any conveyance to Stanley.

The jury found that this arrangement amounted to a loan from National to Stanley; whereupon the court entered judgment that the defense of usury was established and dismissed the complaint.

We affirm.

The appellant seeks to distil from the New York cases a rule to the effect that in order for the courts to strike down for usury a transaction cast in a form other than a loan either there must be "Com-

mercial Inconsistency," citing Monetary Service Corp. v. Kroll, 250 App.Div. 832, 294 N.Y.S. 513, or "Commercial Unreasonableness," citing Thomas v. Knickerbocker Operating Co., 202 Misc. 286, 108 N.Y.S.2d 234. Although as we have already said, the test for inquiring into the true nature of the transaction was here waived by the nature of the submission, it may be appropriate to point out that there was ample evidence of Commercial Inconsistency as defined by appellant in that here the plaintiff purported to buy old equipment, six to eight, eight to nine years old, at the original invoice price as stated by Stanley, and without examination and without inquiring whether it was free of mortgage or other lien or even without requiring it to be transferred by title papers; it never acquired formal title to any of the new equipment and made no inspection of it; it did require a good financial statement which seemed adequately to guarantee Stanley's ability to pay. Finally, there was testimony of both Stanley and Rosen that the particular form of the transaction would give Stanley certain income tax advantages, thus supplying what the jury might find was the motivating reason for casting what would otherwise be a loan in the mold of a lease.

As to the test of Commercial Reasonableness, it should be added further that appellant itself foreclosed any proof of this issue. When Stanley sought to prove the actual cost for the money over the five year period, counsel for National objected on the ground that it had already agreed that it was in excess of the legal limit, and "we concede that if this is a loan it is unenforceable, so regardless of what the amount is * * *"

Opposing counsel interjected: "That's not enough really." Whereupon Mr. Silverman said: "The only question is whether it was a loan or not because I concede if it were a loan it is unenforceable."

It is abundantly clear that court and counsel tried the case below on the assumption that such was the only question. The issues cannot now be changed on appeal.

We have considered appellant's contention of the refusal of the trial court to permit testimony of what officers of the corporation intended the transaction to be, and to prove charter limitations as preventing the making of loans. We think the rulings in this regard were not prejudicial error.

The judgment is affirmed.