John F. RYAN, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

United States District Court
S. D. New York.

Jan. 19, 1962.

John P. Hale, New York City, for plaintiff (Joseph Hausman, New York City, of counsel).

James B. McLaughlin, New York City, for defendant (Edwin R. Wolff, New York City, of counsel).

COOPER, District Judge.

The issue to be determined in this case, as framed by the pre-trial order, is whether a certain policy of automobile liability insurance written by the defendant for Juan R. Lanzo, was in effect on May 5, 1958, when Lanzo, while driving his automobile, struck and injured the plaintiff herein. The case was submitted on an agreed statement of facts.

### I.

In February, 1958, Juan R. Lanzo, of New York City, purchased an automobile. Since he was subject to the New York Financial Security Law and could not register the car until he had liability insurance, he approached an insurance broker, Best Brokerage Inc., of the Bronx, New York, regarding the purchase of a policy. Lanzo paid Best Brokerage $43.00 as a down payment on the premium and applied, through Best, to the Assigned Risk Plan, which designated Allstate Insurance Company to insure him. Thereafter, Allstate issued a liability insurance policy to Lanzo covering him for a period of one year, effective February 10, 1958.

The total premium on this policy amounted to $144.70. Lanzo, having already paid $43.00 to Best Brokerage as a down payment, paid an additional $1.70 toward the balance of the premium and executed a note to cover the remaining $100.00.

To accomplish such financing of the $100.00 due on his insurance premium Lanzo signed a note for $110.00 made payable to the order of Best Brokerage. This amount included an additional $10.-

00 referred to in the note as a "service charge."

The note was payable in eight equal monthly installments of $13.75, commencing March 11, 1958; and Best Brokerage immediately assigned it to The Lafayette National Bank of Brooklyn, which then paid (or had already paid) to Allstate the remaining $100 of the premium on Lanzo's policy. Allstate promptly issued the required certificate (Form FS–1) stating that it had insured Lanzo; and thereafter Lanzo filed the certificate with the Motor Vehicle Commissioner and obtained the registration and license plates for his car.

By the terms of the note, Lanzo was obligated to make the first installment payment of $13.75 to The Lafayette National Bank on March 11, 1958. This he did. The payment to the bank due on April 11, 1958, however, was not paid by Lanzo on time.

On April 16, 1958, the Lafayette Bank mailed a letter, entitled "Notice of Default and Intention to Cancel" to Lanzo stating that if the past due payment, and in addition a late charge of one dollar, were not received within ten days of the due date, it would exercise its "rights under the terms and conditions of the note" and request the insurance company immediately to cancel the policy.[1]

On April 28, 1958, Lanzo had still failed to pay the April 11th installment; and the bank mailed a cancellation request to Allstate, with copies to Lanzo and Best Brokerage. In pertinent part, this April 28th letter to the insurance company stated:

"This is to advise that the indicated assured [Juan R. Lanzo] has defaulted in the payment of an installment under the note and assignment, a copy of which is on file with you.

"We hereby request cancellation immediately of the referred to policy by virtue of authority and Power of Attorney vested in us under paragraph four (4) of said assignment."

Allstate received the letter on April 29, 1958; and the policy was accordingly canceled, effective April 29, 1958, at 12:-01 A.M.

In the meantime, however, Lanzo had obtained a postal money order for $14.75 on April 28, 1958 and mailed it to the bank, which received it on April 30, 1958.

On May 5, 1958, Lanzo, while driving his automobile in New York City, struck and knocked down the plaintiff, John F. Ryan. A negligence suit was subsequently commenced against Lanzo in the State Supreme Court based on this accident.

Allstate sent a notice to the bank on May 13, 1958, with a copy to Lanzo, advising that in accordance with the bank's request the policy had been cancelled effective April 29, 1958.

On May 15, 1958, Allstate paid the bank $98.40, the unearned portion of the premium. From 'this amount the bank deducted $86.13, which it claimed due to it by reason of the premium paid to Allstate on Lanzo's behalf. The balance of $12.27 was mailed to Best Brokerage, which refunded it to Lanzo sometime after May 15, 1958.

Allstate refused to defend the state court action commenced against Lanzo and asserted that the policy had been cancelled prior to the accident. Subsequent-

---

1. The provisions referred to in the April 16th letter appear in paragraph 4 of the note signed by Lanzo:

"4. Default by the undersigned insured in the payment of any installment hereunder when due, shall render the whole unpaid balance of principal hereof immediately due and payable without notice, *and if default continues for ten (10) days thereafter, shall constitute* *an election by the undersigned insured to cancel said policy.* It is agreed that, in such event, the undersigned insured will promptly return the policy and the payee is hereby authorized to notify the insurance company of such cancellation, and to collect and receive from such company all return or unearned premium for application as above mentioned."

ly, after an inquest with respect to damages, a judgment in the sum of $25,185.00 was entered in favor of Ryan in the Supreme Court, Bronx County. Allstate disclaimed liability for any portion of this judgment, however, contending that the coverage had been terminated by the insured on April 29, 1958, six days before the accident.

Thereupon, Ryan commenced the present action against Allstate. Jurisdiction is premised upon diversity of citizenship. 28 U.S.C.A. § 1332.

## II.

■ It is manifest that under basic "diversity" principles the rights and liabilities of the parties herein are determinable by New York law.

The financial security provisions of New York's Vehicle and Traffic Law, § 93–c in effect at the time of the events in question, L.1956, c. 655, § 2, stipulated that liability insurance required by law should not terminate upon cancellation by the insurer until ten days after written notice of such cancellation had been mailed to the insured.[2]

■ Under New York law, this statutory method of cancellation upon appropriate notice of termination is the sole means of cancellation by the insurer. Teeter v. Allstate Insurance Co., 9 A.D.2d 176, 192 N.Y.S.2d 610 (4th Dept., 1959) aff'd 9 N.Y.2d 655, 212 N.Y.S.2d 71, 173 N.E.2d 47 (1961).

If the Lafayette Bank actually lacked valid authority to act for Lanzo in requesting cancellation, the insurance was then cancelled not by the insured but by the *insurer*. In that event, under the terms of the statute Lanzo's coverage could not have been terminated until ten days after mailing of the notice of cancellation on May 13, 1958, and would still have been in effect on the date of the accident, May 5, 1958. See Teeter v. Allstate Insurance Co., supra.

Plaintiff contends that the bank, in fact, had no authority to request cancellation on Lanzo's behalf because the note purporting to confer such authority is void for usury. See New York General Business Law, McKinney's Consol.Laws, c. 20, §§ 370, 371, 373.

In substance, plaintiff argues that the so-called $10.00 "service charge" is a subterfuge; that it is, in reality, interest on the advance or loan of $100.00; and that the $10.00 interest on $100.00 for eight months exceeds the legal rate of six percent under New York law and renders the entire instrument void. Plaintiff relies heavily in this respect on the holding in De Persia v. Merchants Mutual Casualty Co. et al., 268 App.Div. 176, 49 N.Y.S.2d 324 (2nd Dept., 1944), aff'd 294 N.Y. 708, 61 N.E.2d 449 (1944), a case in which a similar power of attorney to request cancellation was found void by the New York courts on the ground that the instrument in which it was contained was tainted with usury.

Defendant contends that the $10.00 was not interest, but was, rather, a "service charge" imposed by the broker in connection with its submission of Lanzo's application to the Assigned Risk Plan. Defendant urges that Best Brokerage was entitled to such a "service charge" in addition to the usual commission which it received as broker, for placing the insurance. Thus, defendant claims that the note was made entirely without interest and for that reason may not be regarded as usurious. However, defendant's assertion of the absence of interest seems unrealistic and plainly lacks cogency when examined in the actual context of the transaction in question.

■ I conclude, from all the facts and circumstances, that this $10.00, although denominated a "service charge," actually represented interest on the advance or loan of the $100 balance on Lanzo's insurance premium. In effect the term "service charge" was a euphemism which

---

2. See also the current provisions dealing with cancellation of insurance for nonpayment of premium in present Vehicle & Traffic Law, McKinney's Consol.Laws, c. 71, § 313; L.1959, c. 775.

cloaked a rate of interest in excess of the maximum permitted under New York law. Since nothing appears in the agreed statement of facts which would permit a higher rate of interest than the legal rate of six percent provided by General Business Law § 371, it must be concluded that the note was void in its entirety and the bank had no authority to act for Lanzo in requesting cancellation. De Persia v. Merchants Mutual Casualty Co. et al., supra. Hence, the policy was still in effect, on May 5, 1958, when Lanzo struck and injured the plaintiff herein.

With respect to such transactions, the New York courts have repeatedly looked to the actual nature of the transaction and not to the form in determining whether there is a usurious rate of interest. See De Persia v. Merchants Mutual Casualty Co. et al., supra; Schanz v. Sotscheck, 160 App.Div. 798, 145 N.Y.S. 778 (1st Dept., 1914); United Thrift Plan, Inc. v. Goldstein, 134 Misc. 91, 94, 234 N.Y.S. 592 (Municipal Ct., Manhattan, 1929); see also National Equipment Rental Ltd. v. Stanley, 177 F.Supp. 583 (S.D.N.Y.1959), aff'd 283 F.2d 600 (2 Cir. 1960). Indeed to do otherwise would render the statute against usury substantially unenforceable, since in most usurious transactions a subterfuge of one kind or another is resorted to for the purpose of giving it a legal appearance.

In the De Persia case, supra, the broker undertook to pay, or to assume payment, to the insurance company of a premium upon the policy in the amount of $49.50, in return for which the "assured" agreed to pay to the broker a down payment of $4.95 and the balance of $44.55 in nine monthly installments of $4.95. The broker imposed what he termed a "service charge" of $2.50. The court found that this so-called "service charge" in effect represented a usurious interest charge at the rate of 14.85% per annum on the loan. Consequently, the court held the note and contract covering the loan, including the power of attorney contained therein, entirely void (268 App. Div. 176, 49 N.Y.S.2d 324).

In the instant case, the $10.00 charge to cover the loan of $100.00 for a period of eight months in fact constitutes 15 percent interest and manifestly violates the provisions of the New York usury laws. See New York General Business Law, §§ 370, 371, 373. The power of attorney contained in the note executed by Lanzo was therefore void on its face and did not constitute any authority for the bank to cancel the policy.

Best Brokerage, furthermore, acted as an unlicensed lender in this transaction. Hence, the note made payable to it was also rendered void in that the charge exceeded that permitted under New York Banking Law, McKinney's Consol.Laws, c. 2, Article IX, § 357. See, e. g., Equity Service Corporation v. Agull, 250 App. Div. 96, 293 N.Y.S. 872 (1st Dept., 1937).

The fact that the note was assigned to the bank does not alter its usurious nature. Nor is there any proper basis for treating such an instrument as a conditional sales agreement. (Cf. New York Personal Property Law, McKinney's Consol.Laws, c. 41, § 301 et seq.)

■ It is evident that the note and contract, which were void as to the insured, remain equally void as to plaintiff, who stands in the same legal position. De Persia v. Merchants Mutual Casualty Co. et al., supra; Lesk v. London & Lancashire Indemnity Co., 286 N.Y. 443, 36 N.E.2d 655 (1941). The policy itself, however, though indirectly connected with an illegal transaction, is supported by independent consideration and may therefore be enforced under New York Law. De Persia v. Merchants Mutual Casualty Co. et al., supra.

■ For the reasons stated above, the court concludes that the Lafayette Bank lacked valid authority to request cancellation of Lanzo's insurance coverage, and that on May 5, 1958, the date of the accident, Lanzo's policy still remained in force. Judgment for plaintiff.

Settle order on notice in accordance with this opinion.