Charles H. Coheh, J.
This is an action by plaintiff, an employment agency, to recover from defendant a fee for finding him employment with the third-party defendant, the Mutual Life Insurance Company of New York (“Mony”). As might be expected, this lawsuit arises because defendant did not long remain an employee of Mony. This, ordinarily, should not have caused any great difficulty since the agreement entered into by plaintiff and defendant, in accordance with sections 185 and 186 of the General Business Law, covered this contingency. However, the arrangements actually made for the payment of plaintiff’s fee did not follow the terms of this agreement.
Plaintiff referred defendant to Mony for employment as an insurance salesman (or a “Field Underwriter” according to Mony’s printed form) at what plaintiff thought was a salary of $600 per month. Plaintiff told defendant that Mony would pay plaintiff’s fee if defendant were hired and defendant would not be obligated to pay any fee to plaintiff. Defendant was interviewed by Mony’s agency manager, the third-party defendant, Katz. The latter informed defendant that he could not be hired for this job since he did not have the required license. It appeared that a licensing test was being given the next day. Defendant insisted that he take the test. Although Katz had misgivings about one taking the test without preparation, he sponsored defendant who took the test. About three weeks later, defendant learned that he passed the test. On February 29, 1972, he met'with Katz, who noted that he had done very well on the test, to discuss his employment.
Plaintiff was apparently advised that Mony had hired defendant on February 29,1972, since it filled in its “ Placement Data ” form which noted that defendant had accepted a position with Mony at a salary of $600 per month starting on February 29, 1972 with a “ service charge ” of $300 to be paid by Mony; and plaintiff further issued its invoice No. 0115 directed to Mony bearing date February 29, 1972 for a service charge in the amount of $300 with reference to the placement of defendant with Mony starting on February 29, 1972 at a salary of $600 per month.
Meanwhile, it appeared that, in discussing defendant’s employment with Mony, Katz pointed out that almost all of the insurance salesmen working for him worked on a commission basis and not on salary. After defendant insisted that he had to have a salary of $600 per month, Katz said that if defendant were *501 hired on such a salary basis, Mony would not pay the agreed $300 fee to plaintiff and defendant would have to pay it. On March 1, 1972, defendant and Mony entered into Mony’s form of printed agreement and supplement, each of which provided, among other things, that defendant Mony could terminate the employment at any time despite the name of the agreement: “ Lifetime Plan Contract On that same date, defendant signed a letter, prepared by Katz, which read as follows:
“ March 1,1972
Mr. Alan Katz, C. L. U.
Manager
Mutual of New York 107-40 Queens Boulevard Forest Hills, N. Y. 11375 Dear Mr. Katz:
I understand that I am taking on the obligation of paying the employment agency at $100 each month for a period of three (3) months until the $300 agency fee is paid. I release you, Mr. Katz, of all obligations and responsibility in this area.
Yours truly,
S/S Salim Ahmed Nassir
Salim Ahmed Nasir 3-1-72 ”
Thereafter, apparently about two weeks later and after Mony had hired defendant, a three-way telephone conversation took place among defendant, Katz and Scott of plaintiff, in which defendant agreed to pay the fee. The main factual issue before the court is the exact nature of this agreement. Plaintiff and Mony take the position that defendant assumed an absolute obligation to pay plaintiff the $300 flat fee which Mony originally agreed to pay. Defendant claims that he only agreed to pay the fee if he received a permanent job with Mony which he regarded as a three-year job. Since defendant was given notice of termination on March 31,1972 and was terminated on about April 15, 1972, after having received a total salary of $900, he claims that he is not obligated to pay plaintiff the $300 flat fee which originally was an obligation of Mony. It is pointed out by Katz in behalf of Mony that the form contract between Mony and defendant provides, despite its title, “ Lifetime Plan Contract ”, for a right of termination and, therefore, defendant could hardly have regarded his employment as having any degree of permanency. On the other hand, the typewritten letter of March 1, 1972, prepared by Katz and signed by defendant, states that *502 defendant took on the obligation to pay the employment agency, plaintiff, ‘ ‘ at $100 each month for a period of three (3) months ’ This specially prepared document (together with the title of Mony’s printed form of contract) could very well have led defendant to believe that he would be employed for some time or at least 3 months if he took over Mony’s $300 obligation to pay plaintiff. (Cf. Laurino v. Hewman, 10 A D 2d 725.)
This document — which looks more like an indemnity agreement than one indicating a direct obligation to pay- — -was apparently not known to plaintiff at the time it was -signed. It would appear, however, that it may very well -have influenced Katz and defendant in the three-way telephone conversation, each interpreting it in his own way, with Scott listening and simply picking up instructions that defendant would pay and not being too concerned with the details.
The court finds that defendant did not absolutely take over the obligation or agree to pay it under all circumstances. Aside from the fact that it would be unlikely for one to agree to pay an employment fee of $300 when one could be terminated immediately thereafter, it is unlikely that plaintiff would have accepted such an agreement from defendant since such an absolute agreement to pay an employment agency fee would be in violation of law.
Plaintiff is engaged in a business strictly regulated by law. (See General Business Law, art. 11.) In plaintiff’s original agreement with defendant — -which is not the agreement upon which plaintiff sues — plaintiff scrupulously followed the provisions of sections 185 and 186 of the General Business Law and made specific reference to this statute. Subdivision 3 of section 186, the provisions of which are incorporated into plaintiff’s form of contract, provides that if a job applicant’s employment is terminated without his fault, the fee. charged cannot be more than 10% of the salary received. In this case, if defendant’s employment was so terminated, the maximum fee could not exceed $90. While plaintiff carefuly entered into a detailed written agreement with defendant in the first instance in accordance -with -subdivision 1 of section 185 of the General Business Law, its relations with Mony, perhaps because of prior business dealings, were more casual. WThether or not the same degree of care was necessary with respect to employers — where fees are also subject to limitation by statute —need not be decided here. But when the employment agency looks to the job applicant for its fee, whether an- original obligation or one the job applicant took over from the employer, it must strictly comply *503 with the statute. The obligation sued upon here, one taken over from the employer, Mony, apparently had no limitation in the event defendant were terminated without cause. An agreement creating such an obligation would contravene the public policy of the State as expressed in sections 185 .and 186 of the General Business Law (Straus & Co. v. Canadian Pacific Ry. Co., 254 N. Y. 407, 414), and would result in an illegal contract which would not be enforceable. (McConnell v. Commonwealth Pictures Corp., 7 N Y 2d 465, 469; O’Mara v. Dentinger, 271 App. Div. 22; Equity Serv. Corp. v. Agull, 250 App. Div. 96; Dyer v. Broadway Cent. Bank, 225 App. Div. 366.) The court finds that defendant did not agree to pay plaintiff’s fee where, as in this case, his employment lasted only six weeks.
The court, in finding in favor of defendant, expresses no opinion with respect to any claims of plaintiff against Mony which, for reasons best known to plaintiff, it did not join as a defendant in this action even after defendant Nasir joined Mony as a third-party defendant and thereby gave plaintiff an absolute right to assert a claim against Mony (CPLR 1009). Similarly, the court expresses no opinion with respect to any claims over which Mony might have against defendant, although, as noted above, the application of sections 185 and 186 of the General Business Law would have to be considered in such a case.
With respect to the complaint, the court directs judgment in favor of defendant against plaintiff, and defendant’s third-party complaint is dismissed. Under the circumstances of this case, the court determines that it would not be equitable to allow costs and, therefore, no costs are allowed (CCA, § 1902).
The foregoing constitutes the decision of the court in accordance with CPLR 4213 (subd. [b]).