DAVID A. CONRAD et al., Appellants-Respondents, v BENEFICIAL FINANCE COMPANY OF NEW YORK, INC., Respondent-Appellant.

Fourth Department, April 7, 1977

*Rene Reixach* for appellants-respondents.

*Harris, Beach & Wilcox (Paul Meunier* of counsel), for respondent-appellant.

DILLON, J. This action is founded upon plaintiffs' claim that the disclosure statement furnished them by defendant, a consumer finance agency, in connection with a loan made in June, 1974, failed to comply with the Federal Truth in Lending Act (US Code, tit 15, § 1601 *et seq.)* and the regulations promulgated thereunder (Regulation Z, 12 CFR 226.1 *et seq.).* Plaintiffs moved for summary judgment on their first cause of action alleging that the disclosure statement failed to set forth defendant's right of acceleration in violation of section 1639 (subd [a], par [7]) of the act and section 226.8 (b) (4) of the regulations; on their third cause of action alleging that the disclosures were not made in a meaningful manner in violation of subdivision [a] of section 1631 of the act and section 226.6 (a) of the regulations; and on their fourth cause of action alleging that the defendant's failures to make the requisite

disclosures rendered the loan void pursuant to section 358 of the Banking Law.

Special Term concluded that the failure to disclose the acceleration provision constituted a statutory violation and awarded plaintiffs a penalty of $1,000 together with reasonable counsel fees pursuant to section 1640 (subd [a]) of title 15 of the United States Code. Plaintiffs' motion for summary judgment on the third and fourth causes of action was denied. Both parties appeal.

With respect to defendant's failure to set forth the acceleration provision, the act requires disclosure of "default, delinquency, or similar charges payable in the event of late payments" (US Code, tit 15, § 1638, subd [a], par [9]). Similarly, the regulations call for disclosure of "[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments." (12 CFR 226.8 [b] [4].) The issue then is whether the acceleration clause represents a default, delinquency, or similar charge.

The staff of the Federal Reserve Board takes the view that an acceleration clause is not a "charge" payable on default unless the method for rebating unearned portions of the finance charge yields different results upon acceleration by the creditor than upon prepayment by the debtor. When the creditor does not rebate the same amount of finance charges upon acceleration as it does upon prepayment, "any amounts retained beyond those which would have been rebated under the disclosed rebate provisions represent a 'charge' which should be disclosed under § 226.8 (b) (4)." (Federal Reserve Board Letter No. 851, 5 CCH Consumer Credit Guide, par 31,173 [Oct. 22, 1974].) This interpretation of the requirements of sections 226.8 (b) (4) and 226.8 (b) (7) has been specifically rejected by the Fifth Circuit in *Martin v Commercial Securities Co.* (539 F2d 521, 529), which held that "in the absence of a regulation requiring it, failure to disclose an acceleration clause and the lender's rebate policy with respect thereto in an installment credit transaction does not give rise to a claim for statutory damages." Application of *Martin* here, of course, would necessarily require reversal of the judgment granted at Special Term.

The Third Circuit, however, in *Johnson v McCrackin-Sturman Ford* (527 F2d 257) adopted the Federal Reserve Board staff's interpretation. Noting that acceleration is essentially a prepayment, the *Johnson* court found that where the method

for rebate on acceleration was the same as that for voluntary prepayment, "it was unnecessary to include a separate provision delineating the method of rebate in the event of acceleration" (p 269, n 28). In such a circumstance, acceleration of the loan upon a failure to make payments does not result in a "'default, delinquency, or similar charge'" (p 268) and there is no need for disclosure.

Here the loan contract prescribes the same rebate method for refunding unearned precomputed interest upon acceleration as upon prepayment, and to that extent we find that the acceleration is not a "charge". Plaintiffs argue, however, that disclosure is required because the formula for rebating insurance premiums upon acceleration results in a greater amount retained by the creditor than upon prepayment.

This assertion necessarily presents a question as to whether defendant complied with section 1605 (subd [b]) of title 15 of the United States Code and 12 CFR 226.4 (a) (5) (ii). Essentially, these sections provide that insurance charges shall be included in finance charges unless the debtor gives specific written indication of his desire for insurance coverage. Whether such an indication was given here is specifically at issue in plaintiffs' second cause of action on which no motion for summary judgment was made. Moreover, the issue has not been directly addressed by the parties in this appeal and cannot now be resolved. Thus, whether we apply the broad rule of *Martin v Commercial Securities Co.* (539 F2d 521, *supra)* or, in the circumstances of this case, the rationale of *Johnson v McCrackin-Sturman Ford* (527 F2d 257, *supra),* plaintiffs are not entitled to summary judgment on their first cause of action. It is unnecessary to have further proceedings thereon, however, in view of our determination with respect to plaintiffs' third cause of action (see *Mirabal v General Motors Acceptance Corp.,* 537 F2d 871, 880).

The issue presented in the third cause of action is whether defendant's statement of disclosure sets forth the items which must be disclosed clearly and conspicuously (see US Code, tit 15, § 1631) and in meaningful sequence (see 12 CFR 226.6 [a]). We are guided in the resolution of this question by the purpose of the Truth in Lending Act, which is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit" (US Code, tit 15, § 1601). Additionally, the phrase "in meaningful

sequence" has been interpreted to mean that items which are arithmetically related should be placed "within a reasonable proximity to each other, not mixed with items which are irrelevant to a progression of arithmetical computations or thought * * * so that the customer will not be required to search for any arithmetical items which should logically follow a previous one." (Federal Reserve Board Public Position Letter No. 780, 5 CCH Consumer Credit Guide, par 31,102 [April 10, 1974].) We attach great weight to this interpretative pronouncement of the board (see *Mourning v Family Pub. Serv.,* 411 US 356, 365; *Udall v Tallman,* 380 US 1, 16-17, reh den 380 US 989; *Philbeck v Timmers Chevrolet,* 499 F2d 971, 976-977).

Our examination of defendant's disclosure statement shows that it neither attains the purpose nor complies with the letter of the act and the regulations. The attempt to understand this form requires one to search for related items, and even then uncertainty and confusion remain as the result of its desultory composition. The disclosure statement is appended hereto and we note that it is substantially identical to that printed in *Allen v Beneficial Finance Co. of Gary* (531 F2d 797, 807-808, cert den 45 US Law Week 3280 [October 12, 1976]). To the extent that *Allen* (pp 802-803) finds that the form is defective, we adopt its rationale and conclusion here. Specifically, defendant's disclosure statement groups together certain terms which are neither arithmetically nor logically related, and fails to present sensibly those terms which do bear such relationships.

We do not consider defendant's contention that the "meaningful sequence" requirement is so vague and uncertain as to be unconstitutional, since the record fails to indicate that it was raised at Special Term (see *Slater v Gallman,* 38 NY2d 1, 4; *Flagg v Nichols,* 307 NY 96, 99).

Plaintiffs' motion for summary judgment on their third cause of action, therefore, should be granted and they should be awarded a statutory penalty of $1,000 together with reasonable counsel fees. While it is unnecessary to remand with respect to plaintiffs' first cause of action inasmuch as multiple failures to disclose would not increase plaintiffs' recovery (see US Code, tit 15, § 1640, subd [g]), the determination of additional attorneys' fees should initially be made in the court of original instance *(Matter of Kellogg,* 55 AD2d 215; *Matter of*

*Hedrick,* 52 AD2d 1035; *Matter of Ebright v Ward,* 39 AD2d 1013).

Plaintiffs' contention that they are each entitled to recover a $1,000 statutory penalty lacks merit. Plaintiffs are husband and wife who entered into this single credit transaction, and in the absence of clear statutory language to the contrary, "it is not to be lightly supposed that the statutory maximum is to be doubled, trebled, or quadrupled, depending upon the number of joint obligors in a single consumer credit transaction. That we should treat husband and wife, when joint obligors, as one is indicated by the legislative history" *(Powers v Sims,* 542 F2d 1216, 1219; contra, *Mirabal v General Motors Acceptance Corp.,* 537 F2d 871, 883, *supra).*

The applicable legislative history recites that "[a]ny creditor failing to disclose required information would be subject to civil suit with a penalty equal to twice the finance charge, with a minimum penalty of $100 and a maximum penalty of $1,000 *on any individual credit transaction".* (H R Rep No. 1040, 90th Cong, 1st Sess [1976], 1968 US Code Cong & Admin News, pp 1962, 1976, emphasis added.)

The final issue in this appeal is whether plaintiffs are entitled to a refund of their payments on this loan pursuant to section 358 of the Banking Law. To the extent applicable, section 358 provides that a loan transaction which is violative of section 353 of the Banking Law constitutes a misdemeanor and "shall be void and the lender shall have no right to collect or receive any principal, interest or charges whatsoever". Section 353 directs a lender to comply with the provisions of the Federal Truth in Lending Act.

Initially, we disagree with Special Term's conclusion that the Legislature must not have intended that the civil penalties provided in section 358 would apply to violations of the Truth in Lending Act when it amended section 353 (L 1969, ch 1141, § 7). A statute should not be deemed repealed by a later enactment which contains no language of repeal, unless the two are in such conflict that they cannot be reconciled *(People v Newman,* 32 NY2d 379, 389-390; McKinney's Cons Laws of NY, Book 1, Statutes, § 391).

The legislative memoranda submitted upon the amendment to section 353 enumerated the penalties for violations of the Federal Truth in Lending Act (see McKinney's Session Laws of 1969, pp 2510-2511). While we concur with Special Term that some reference to section 358 might reasonably have

been expected in such an enumeration of penalties, we do not view its omission as tantamount to repeal of that section.

Furthermore, defendant's contention that section 353 is unconstitutional (NY Const, art III, § 16), insofar as it incorporates by reference future amendments to the Federal Truth in Lending Act, is irrelevant since plaintiffs' claims are not based upon any such amendment. Similarly, we need not reach the issue of whether section 353 improperly allows the Congress and the Federal Reserve Board to define a crime in this State inasmuch as we are not concerned here with a criminal prosecution. Nor do we accept defendant's argument that the availability of the civil remedy afforded by section 358 is conditioned upon a specific finding of criminal liability. Indeed, civil liability pursuant to section 358 has been imposed without assessment or consideration of criminal responsibility (see *Equity Serv. Corp. v Agull,* 250 App Div 96, 101; *Personal Finance Co. of N.Y. v Gross,* 170 Misc 166, 169). We view this statute as providing a separate and distinct civil remedy (see McKinney's Cons Laws of NY, Book 1, Statutes, § 275).

Accordingly, we conclude that section 358 operates to render this loan void. As we have previously indicated, however, the plaintiffs are not thereby vested "with a right to recover payments of principal and interest voluntarily made upon a loan otherwise valid except for defective disclosure." *(Conrad v Home & Auto Loan Co.,* 53 AD2d 48, 53.) Plaintiffs assert that by stipulation with the defendant several payments were made under a reservation of rights and without prejudice. The stipulation, however, does not appear in the record and, since plaintiffs' claim may well bear upon the issue of voluntariness, their fourth cause of action, to the extent of such payments, remains viable.

Special Term's order granting summary judgment on plaintiffs' first cause of action should be reversed and the motion denied; its order denying plaintiffs' motion for summary judgment on their third cause of action should be reversed and plaintiffs' motion granted in accordance herewith; and its order denying plaintiffs' motion for summary judgment on their fourth cause of action should be affirmed, but so much of plaintiffs' fourth cause of action as seeks recovery of payments voluntarily made upon the loan should be dismissed.

MARSH, P. J., MOULE, GOLDMAN and WITMER, JJ., concur.

Order and judgment unanimously modified on the law and facts in accordance with opinion by DILLON, J., and as modified affirmed with costs to plaintiffs.

## STATEMENT OF DISCLOSURE   (Borrowers Copy)

As shown hereon, the amount shown below as the Total of Payments, which is the Amount Financed plus the Finance Charge, is payable in successive monthly instalments of principal and interest combined. The Number of instalments and the amounts of the 1st Instalment and the Other instalments are set forth below. The first of said instalments is payable on the 1st Due Date shown below and each subsequent instalment on the same day of each succeeding month thereafter, the final instalment being due and payable on the Final Due Date shown below. The sum of the instalments is shown below as the TOTAL OF PAYMENTS.

LENDER: BENEFICIAL FINANCE CO. OF NEW YORK, INC.

23 A SOUTH TOWN PLAZA
3333 W. HENRIETTA RD.
ROCHESTER, N.Y. 14623
333703 TEL. 244-9450
OPEN DAILY 10.30 TO 6.30
THURS. TO 8. CLOSED SAT.

Security: The security for this loan is checked below.

Security Agreement dated 6-24-74
on ☒ Furniture  Yr.  Make
on ☐ Auto
☐ Accommod   2  ☒ Wage Maker   Assignment
INSURANCE IS INCLUDED IF COST OR PREMIUM IS INSERTED TO THE LEFT HEREON

If the box alongside the word "Furniture" is checked, the Security Agreement identified by the date shown hereon covers all of the consumer goods of every kind then owned by the Borrowers and located at the Borrowers' place of residence set forth hereon. Such Security Agreement secures future advance or loans made by Lender to Borrowers, at Lender's option, within five years of the date of such Security Agreement.

Account No.  Type
1555311  26

Name & Mailing Address of Borrower(s)   Spouse
Conrad,Mr.David,Naomi
1179 Park Ave
Rochester, N.Y. 14610

Residence Address
← if not the same

| Date of Loan | 1st Due Date | Final Due Date | 1st Instal | Other Instals | Payable in |
|---|---|---|---|---|---|
| 6/24/74 | | 6/24/77 | 62.00 | 62.00 | 36 Monthly Instalments |

$ 2232.00  TOTAL OF PAYMENTS
$ 552.23  FINANCE CHARGE
1 1679.77  AMOUNT FINANCED
3 53.34  Disability Ins. Cost
4 33.75  Life Ins. Cost
5 NONE  Auto Phys Dam Ins Prem
6 NONE  Auto. Liab.Ins. Prem.
7  Filing Fees—UCC Forms
8 2.50  Title Fees

$ 1735.? Unpaid Balance - Prior Loan
$ 322.87 Precomputed Interest
$  Time Price Differential
$  Other
$ 3.34 Disability Ins. Cost
$ 21.50 Life Ins. Cost
2 1355. Net Balance - Prior Loan
22 Nature of security
19.55 % ANNUAL PERCENTAGE RATE
$ 2 Default Charge

► REFUNDS  At the direction and request of the Borrowers, on their behalf and for their benefit, the Lender has disbursed, from the Amount Financed, the proceeds of loan for Items 2 through 8 shown below as follows for the items shown below as follows

9.To _____ $ _____
10.To _____ $ _____
11.To _____ $ _____
12.To _____ $ _____
13.To _____ $ _____
Cash or Check Delivered to Borrowers $ 234.22
(Line 1 less sum of lines 2 through 13)

DEFAULT CHARGE—The Lender may collect the Default Charge shown above if more than one half of any scheduled instalment is not paid on the fifth day after its due date. Such Default Charge is equal to refund that would be required for prepayment in full one month prior to the Final Due Date.

REFUNDS—The Lender shall refund a portion of the Finance Charge to the Borrowers, if the loan is paid in full prior to the Final Due Date or any deferred final due date computed on the Direct Ratio Refund Method, generally known as the Rule of 78ths, as of the instalment date nearest the date or prepayment in full The Lender shall make additional refunds to the Borrowers (1) when prepayment in full occurs before the first instalment due date and (2) at the time of payment in full if prior thereto three or more, but not all, instalments are prepaid in full at any one time

### Insurance Authorization and Request and Acknowledgment of Receipt of Loan Proceeds and Statement of Disclosure

The undersigned hereby authorize and request the above identified Lender to arrange for the insurance described below and agree to pay from the proceeds of said loan the identifiable cost thereof as set forth above

Group credit disability insurance, insuring said Principal Borrower against disability during the term of said loan, the benefits of which after 14 days of disability shall be retroactive to the first day of disability and shall be equal for each day of disability to 1/30th of the monthly instalment on said loan.

Reducing term group credit life insurance, insuring the life of the designated Principal Borrower during the term of said loan for the unpaid balance of the loan at the date of death.

The actual terms of any such insurance shall be those set forth in the Certificate of Insurance issued in connection therewith

The undersigned expressly state and agree that this authorization is made voluntarily, not upon any requirement of the Lender or any of the Lender's employees, and acknowledge that the taking of such insurance is entirely optional.

I desire Credit Disability Insurance   } Signature of Borrower
I do not want Credit Disab. Insurance  }

I desire Credit Life Insurance   } Signature of Borrower
I do not want Credit Life Insurance }

The undersigned further acknowledge receipt from the Lender of a written statement setting forth the premium for insurance written against loss of or damage to property or for liability coverage if obtained through the Lender, which insurance is more specifically identified as follows (check box only if Insurance taken)

☐ Automobile Physical Damage Insurance—Collision and Comprehensive Coverage

☐ Automobile Liability Insurance—Public Liability, Property Damage, and Medical Expenses

The undersigned further acknowledge that with reference to such above identified insurance coverage so selected, the Lender disclosed the above stated premium for such insurance coverage and, that the undersigned have a choice of the person through which to obtain such insurance coverage.

The undersigned also acknowledge receipt of a Statement of Disclosure prescribed by the Federal Consumer Credit Protection Act and Regulation Z issued thereunder and further agree that the proceeds of loan were received on the date shown below and were disbursed, in accordance with the undersigned's authorization, for the items shown above, receipt of the item designated hereon as "Cash or Check Delivered to Borrowers" hereby being acknowledged.

David A. Conrad   Principal Borrower
For the 2nd named above.

Witness _____   Date 6/24, 19 74   By _____ Manager

_____ Co Borrower

STATEMENT RE INSURANCE AGAINST PROPERTY LOSS (Applicable only if Insurance taken—check box)

☐ Automobile Physical Damage Insurance—Collision and Comprehensive Coverage— Premium If Obtained Through Lender ..... $ _____
☐ Automobile Liability Insurance—Public Liability, Property Damage, and Medical Expenses — Premium If Obtained Through Lender . $ _____

The Lender hereby advises the Borrowers that the above described insurance coverage may be obtained through a person of their choice and the Borrowers are under no obligation to obtain such insurance through the Lender.