OPINION OF THE COURT
Norman E. Joslin, J.
On January 25,1974, plaintiff, a corporation engaged in the purchase and resale of depressed inner-city residential properties at inflated prices to first-time minority purchasers, entered into a contract with defendant for the sale of real property located at 20 French Street, using its own printed landsale contract that shifted code compliance and title risk to the purchaser. Although installment payments of interest and principal were structured like a conventional mortgage with provisions for late charges and escrow payments, the contract provided for absolute forfeiture upon any default, thus denying defendant any equity of redemption. Particularly onerous is the provision for a “balloon Payment” after five years, where the scheduled payment would not be amortized for 17 years. Vendor lender, by its direct solicitation, credit evaluation, and personalized marketing, discouraged legal representation. The inevitable default took place after five years. Plaintiff then refinanced with a substantial increase in both inter *217 est and monthly payments, only to once again move upon defendant’s default which flowed out of his unemployment.
Based upon a default in payments and an unpaid water bill (coincidentally also delinquent at the time of refinancing), plaintiff corporation brings this action for ejectment, simply contending that the forfeiture — not only of the principal payments of $5,291.40, but also of some $4,000 to $6,000 of purchaser’s good faith improvements — is contractually correct. Defendant’s counsel raises not only equitable defenses but truth-in-lending violations as well.
Equity historically has placed substance above form and insists that the rules of law not become instruments of oppression. “ ‘One function of a court of equity is to administer justice among people in the realms of business’” (Kaminsky v Kahn, 23 AD2d 231, 240; see, also, United States v Bethlehem Steel Corp., 315 US 289; Home Owners’ Loan Corp. v Wood, 164 Misc 215; Hudson v Matter, 219 App Div 252). On in-depth review of the facts of this case, the court concludes that the equities arising on the part of defendant Ezell Johnson require that the instant transaction be deemed an equitable mortgage which can only be terminated by a foreclosure sale. Plaintiff’s counsel has strenuously argued that any such equitable relief should be undertaken by the Legislature and not be the result of “judicial tinkering” on the part of the court. In a sense, equitable relief always constitutes a measure of judicial tinkering.
The equity of redemption has deep roots in Anglo-American jurisprudence. The New York Legislature by its enactment of article 13 of the Real Property Actions and Proceedings Law has provided a precise method for terminating a vendee borrower’s right of redemption. A unilateral contract that deprives a prospective purchaser from defending his growing equity in the purchased premises is unconscionable and inequitable. The so-called forfeiture rule (see 62 NY Jur, Vendor & Purchaser, § 137) is drawn from a line of factually distinguishable pre-World War I cases involving primarily down payments (see, e.g., Havens v Patterson, 43 NY 218; Page v McDonnell, 55 NY 299; Lawrence v Miller, 86 NY 131; Steinhardt v Baker, 163 NY 410; Coyne v Valley Stream Realty Co., 219 NY 609; Fried- *218 land v Argentor Holding Corp., 242 NY 532). More recent New York cases have applied equitable principles to avoid forfeiture (see Hudson v Matter, 219 App Div 252, supra; De Witt v Patterson, 282 App Div 827; Ruiz v Crespi, 46 AD2d 44; Becker v Rothschild, 141 NYS 528; Naimoli v Massa, 81 Misc 2d 431).
If purchaser’s equity in this instance had been minimal and there had been no significant improvements insulating seller from impairment of security, this court would have had no reluctance confirming the forfeiture and granting ejectment. However, the quantum of defendant’s equity in this instance requires that the instant transaction be deemed an equitable mortgage, based upon these facts, the prevailing movement of New York law, and the legal precedents established elsewhere (see, e.g., Freedman v Rector, Wardens & Vestrymen of St. Matthias Parish of Los Angeles, 37 Cal 2d 16; Strengowski v Gomes, 128 Vt 555; Skendzel v Marshall, 261 Ind 226; H & L Land Co. v Warner, 258 So 2d 293, [Fla]; Sebastian v Floyd, 585 SW2d 381 [Ky]).
The court therefore appoints Marvin R Baum, Esq., as Referee and directs that subject premises at 20 French Street, Buffalo, New York, be sold at public sale in accordance with article 13 of the Real Property Actions and Proceedings Law and that all net proceeds, after the costs of sale, payment of assessments and satisfaction of plaintiff’s principal indebtedness of $4,608.60 with per annum interest at 8Vz% from March 1, 1980 to date of sale, be distributed to defendant Ezell Johnson.
Further, defendant has counterclaimed in this action alleging that the disclosure statements prepared by plaintiff upon refinancing of defendant’s loan violated various sections of the Federal Truth in Lending Act (US Code, tit 15, § 1601 et seq.) and the Federal Reserve Board Regulation Z (12 CFR Part 226), promulgated thereunder.
The court finds that plaintiff is covered by these disclosure requirements in that plaintiff regularly extends or arranges for the extension of consumer credit in the ordinary course of its business, and in that it regularly allows for repayment pursuant to agreement in more than four *219 installments, assessing a finance charge. The court further finds that plaintiff has failed to comply with the Truth in Lending Act and regulation Z in several ways. The purpose of the Truth in Lending Act is to “assure a meaningful disclosure of credit terms so that the consumer [can] compare * * * credit terms * * * and avoid the uniformed use of credit” (US Code, tit 15, § 1601). Regulation Z (12 CFR 226.6 [a]) mandates that the disclosures required by Federal law be clear, conspicuous, and “in meaningful sequence.” “[I]f understandable credit disclosure is to be achieved, disclosure statements must use clear language arranged in an order which provides ease of comprehension. This is meaningful sequence” (Allen v Beneficial Fin. Co. of Gary, 531 F2d 797, 801). The language in the disclosure statement used by plaintiff fails to meet this standard. “[T]he phrase ‘in meaningful sequence’ has been interpreted to mean that items which are arithmetically related should be placed ‘within a reasonable proximity to each other, not mixed with items which are irrelevant to a progression of arithmetical computations or thought * * * so that the customer will not be required to search for any arithmetical items which should logically follow a previous one.’ (Federal Reserve Board Public Position Letter No. 780, 5 CCH Consumer Credit Guide, par 31,102 [April 10, 1974].)” (Conrad v Beneficial Fin. Co. of N.Y., 57 AD2d 91, 95).
The disclosure form used by plaintiff fails to use the precise terminology which is mandated by regulation Z for use in a transaction involving a credit sale (12 CFR 226.8 [c]); the term “Annual Percentage Rate” (APR) is not printed more conspiciously than the other required terminology (12 CFR 226.6 [a]) in that other terms were emphasized in the same way; the forms use the required term, annual percentage rate, and another term, contract annual interest rate, to describe the same item; the various items in the form are not arranged in logical arithmetic fashion (see Conrad v Beneficial Fin. Co. of N. Y., 57 AD2d 91, supra); and the form nowhere indicates the total amount of money to be paid over the course of the contract. Nor does the disclosure form anywhere indicate the full range of *220 remedies which the contract makes available to the plaintiff upon the purchaser’s default.
Thus, the form used by plaintiff fails to meet both the letter and the spirit of Federal disclosure requirements. Based on these violations, the court awards to defendant the statutory penalty of $1,000, to be paid to defendant Ezell Johnson and to be held in escrow by his attorneys for the purpose of providing a fund to defray any expenses arising out of the sale of 20 French Street, including an initial payment of $500 to Marvin R Baum as Referee and the surplus to be paid to defendant after the sale.
In addition, the court awards to defendant’s attorneys, Neighborhood Legal Services, Inc., the amount of $5,000 as reasonable attorney’s fees for services rendered herein (US Code, tit 15, § 1640, subd [a], par [3]).
Finally, at the beginning of trial, Neighborhood Legal Services, Inc., moved to be relieved as counsel for defendant Queen Johnson, on the ground that they had no personal contact with her. Neighborhood Legal Services had, however, put in a notice of appearance on behalf of both defendants. It is clear from the proof adduced at trial that the interests of both defendants coincide. Moreover, it may be that Queen Johnson would be unable to adequately protect her legal rights in this matter except for representation by Neighborhood Legal Services. Therefore, the court denies the motion of Neighborhood Legal Services, Inc., and assigns them to continue to represent defendant Queen Johnson in this action.