FRANKLIN E. BEAN et al., Respondents, v CARL J. WALKER et al., Appellants.

Fourth Department, July 11, 1983

APPEARANCES OF COUNSEL

*Van Fleet, Yeomans & Klim* (*Brett Martin* and *William B. Yeomans* of counsel), for appellants.

*Hancock, Estabrook, Ryan, Shove & Hust* (*Robert A. Small* of counsel), for respondents.

**OPINION OF THE COURT**

DOERR, J.

Presented for our resolution is the question of the relative rights between a vendor and a defaulting vendee under a land purchase contract. Special Term, in granting summary judgment in favor of plaintiffs, effectively held that the defaulting vendee has no rights. We cannot agree.

The facts may be briefly stated. In January, 1973 plaintiffs agreed to sell and defendants agreed to buy a single-family home in Syracuse for the sum of $15,000.[1] The contract provided that this sum would be paid over a 15-year period at 5% interest, in monthly installments of

---

1. The house now has an alleged market value of $44,000.

$118.62. The sellers retained legal title to the property which they agreed to convey upon payment in full according to the terms of the contract. The purchasers were entitled to possession of the property, and all taxes, assessments and water rates, and insurance became the obligation of the purchasers. The contract also provided that in the event purchasers defaulted in making payment and failed to cure the default within 30 days, the sellers could elect to call the remaining balance immediately due or elect to declare the contract terminated and repossess the premises. If the latter alternative was chosen, then a forfeiture clause came into play whereby the seller could retain all the money paid under the contract as "liquidated" damages and "the same shall be in no event considered a penalty but rather the payment of rent".

Defendants went into possession of the premises in January, 1973 and in the ensuing years claim to have made substantial improvements on the property. They made the required payments under the contract until August, 1981 when they defaulted following an injury sustained by defendant Carl Walker. During the years while they occupied the premises as contract purchasers defendant paid to plaintiff $12,099.24, of which $7,114.75 was applied to principal. Thus, at the time of their default, defendants had paid almost one half of the purchase price called for under the agreement. After the required 30-day period to cure the default,[2] plaintiffs commenced this action sounding in ejectment seeking a judgment "[t]hat they be adjudged the owner in fee" of the property and granting them possession thereof. The court granted summary judgment to plaintiffs.

If the only substantive law to be applied to this case was that of contracts, the result reached would be correct. However, under the facts presented herein the law with regard to the transfer of real property must also be considered. The reconciliation of what might appear to be conflicting concepts is not insurmountable.

While there are few New York cases which directly address the circumstances herein presented, certain gen-

**2.** Defendant's offer to bring the payments up to date and pay a higher interest rate on the balance due were unavailing.

eral principles may be observed. "It is well settled that the owner of the real estate from the time of the execution of a valid contract for its sale is to be treated as the owner of the purchase money and the purchaser of the land is to be treated as the equitable owner thereof. The purchase money becomes personal property" (*New York Cent. & Hudson Riv. R. R. Co. v Cottle,* 187 App Div 131, 144, affd 229 NY 514). Thus, notwithstanding the words of the contract and implications which may arise therefrom, the law of property declares that, upon the execution of a contract for sale of land, the vendee acquires equitable title (*Elterman v Hyman,* 192 NY 113, 119; *Williams v Haddock,* 145 NY 144; *Occidental Realty Co. v Palmer,* 117 App Div 505, 506, affd 192 NY 588). The vendor holds the legal title in trust for the vendee and has an equitable lien for the payment of the purchase price (*Trembath v Berner,* 240 NY 618; *New York Cent. & Hudson Riv. R. R. Co. v Cottle, supra; Charles v Scheibel,* 128 Misc 275, affd 221 App Div 816; 4 Pomeroy, Equity Jurisprudence [5th ed], § 1261; 16 Carmody-Wait 2d, § 98:2, p 503). The vendee in possession, for all practical purposes, is the owner of the property with all the rights of an owner subject only to the terms of the contract. The vendor may enforce his lien by foreclosure or an action at law for the purchase price of the property — the remedies are concurrent (*Flickinger v Glass,* 222 NY 404; *Zeiser v Cohn,* 207 NY 407; *Charles v Scheibel, supra*). The conclusion to be reached, of course, is that upon the execution of a contract an interest in real property comes into existence by operation of law, superseding the terms of the contract. An analogous result occurs in New York if an owner purports to convey title to real property as security for a loan; the conveyance is deemed to create a lien rather than an outright conveyance, even though the deed was recorded (*Schulte v Cleri,* 39 AD2d 692) and "one who has taken a deed absolute in form as security for an obligation, in order to foreclose the debtor's right to redeem, must institute a foreclosure, and is entitled to have the premises sold in the usual way" (14 Carmody-Wait 2d, § 92:2, p 612).

Cases from other jurisdictions are more instructive. In *Skendzel v Marshall* (261 Ind 226 [addressing itself to a land sale contract]), the court observed that while legal

title does not vest in the vendee until the contract terms are satisfied, he does acquire a vested equitable title at the time the contract is consummated. When the parties enter into the contract all incidents of ownership accrue to the vendee who assumes the risk of loss and is the recipient of all appreciation of value. The status of the parties becomes like that of mortgagor-mortagee.[3] Viewed otherwise would be to elevate form over substance (*Skendzel v Marshall, supra,* p 234). The doctrine that equity deems as done that which ought to be done is an appropriate concept which we should apply to the present case.

Where sale of real property is evidenced by contract only and the purchase price has not been paid and is not to be paid until some future date in accordance with the terms of the agreement, the parties occupy substantially the position of mortgagor and mortgagee at common law. In New York a mortgage merely creates a lien rather than conveying title (*Moulton v Cornish,* 138 NY 133), but this was not always so. At common law the mortgage conveyed title, and it was to protect the buyer from summary ejectment that courts of equity evolved the concept of "equitable" title as distinct from "legal" title (*Barson v Mulligan,* 191 NY 306, 313-314; see, also, 2 Rasch, Real Property Law and Practice, § 1684; 14 Carmody-Wait 2d, § 92:1). The doctrine of equitable conversion had important consequences. The equitable owner suffered the risk of loss (*Sewell v Underhill,* 197 NY 168, 171, 172) as does a contract vendee in possession today (see General Obligations Law, § 5-1311, subd 1, par b), but concommitantly, the equitable owner was also entitled to any increase in value; "since a purchaser under a binding contract of sale is in equity regarded as the owner of the property, he is entitled to any benefit or increase in value that may accrue to it" (6 Warren's Weed, New York Real Property, Vendee and Vendor, § 6.01). Similarly, upon the parties' death, the vendor's interest is regarded as personal property (i.e., the right to receive money), while the vendee's interest is

---

**3.** New York recognizes the similarity between mortgages and contracts for sale by noting that the latter "shall be deemed to be mortgages" for purposes of paying the mortgage recording tax (Tax Law, § 250).

treated as real property (*Barson v Mulligan, supra,* p 313-314).

Because the common-law mortgagor possessed equitable title, the legal owner (the mortgagee) could not recover the premises summarily, but first had to extinguish the equitable owner's equity of redemption. Thus evolved the equitable remedy of mortgage foreclosure, which is now governed by statute (RPAPL 1301 *et seq.*). In our view, the vendees herein occupy the same position as the mortgagor at common law; both have an equitable title only, while another person has legal title. We perceive no reason why the instant vendees should be treated any differently than the mortgagor at common law. Thus the contract vendors may not summarily dispossess the vendees of their equitable ownership without first bringing an action to foreclose the vendees' equity of redemption. This view reflects the modern trend in other jurisdictions (see *Skendzel v Marshall, supra,* followed in *Sebastian v Floyd,* 585 SW2d 381 [Ky]; *Thomas v Klein,* 99 Idaho 105; *Anderson Contr. Co. v Daugherty,* 274 Pa Super Ct 13; *H & L Land Co. v Warner,* 258 So 2d 293 [Fla]), and has been recognized in New York (*Hudson v Matter,* 219 App Div 252; *Gerder Servs. v Johnson,* 109 Misc 2d 216; 16 Carmody-Wait 2d, ch 98; see, also, 4 Pomeroy, Equity Jurisprudence, §§ 1260-126£ see cases collected at Ann., 4 ALR4th 993; 47 S Cal L Rev 191; 41 Albany L Rev 71; 36 Mont L Rev 110; 28 Wayne L Rev 239).

The key to the resolution of the rights of the parties lies in whether the vendee under a land sale contract has acquired an interest in the property of such a nature that it must be extinguished before the vendor may resume possession. We hold that such an interest exists since the vendee acquires equitable title and the vendor merely holds the legal title in trust for the vendee, subject to the vendor's equitable lien for the payment of the purchase price in accordance with the terms of the contract. The vendor may not enforce his rights by the simple expedient of an action in ejectment but must instead proceed to foreclose the vendee's equitable title or bring an action at law for the purchase price, neither of which remedies plaintiffs have sought.

The effect of the judgment granted below is that plaintiffs will have their property with improvements made over the years by defendants, along with over $7,000 in principal payments on a purchase price of $15,000, and over $4,000 in interest. The basic inequity of such a result requires no further comment (see *Hudson v Matter,* 219 App Div 252, *supra; Gerder Servs. v Johnson,* 109 Misc 2d 216, *supra*).[4] If a forfeiture would result in the inequitable disposition of property and an exorbitant monetary loss, equity can and should intervene (*Thomas v Klein,* 99 Idaho 105, 107, *supra; Ellis v Butterfield,* 98 Idaho 644, 648).

The interest of the parties here can only be determined by a sale of the property after foreclosure proceedings with provisions for disposing of the surplus or for a deficiency judgment. In arguing against this result, plaintiffs stress that in New York a defaulting purchaser may not recover money paid pursuant to an executory contract (*Lawrence v Miller,* 86 NY 131). Although we have no quarrel with this general rule of law (see, e.g., *Dmochowski v Rosati,* 96 AD2d 718, decided herewith), we observe that this rule has generally been applied to cases involving down payments (see *Gerder Servs. v Johnson, supra,* p 217, and cases cited therein), or to cases wherein the vendee was not in possession (see, e.g, *Leonard v Ickovic,* 55 NY2d 727 [factually distinguishable because the defaulting vendee was not in possession and was not attempting to defend his equitable title, but rather to recover money paid under a theory of joint venture]; *Havens v Patterson,* 43 NY 218 [the defaulting party had abandoned possession eight years earlier, whereupon the vendor retook possession and made substantial improvements]).

By our holding today we do not suggest that forfeiture would be an inappropriate result in all instances involving a breach of a land contract. If the vendee abandons the property and absconds, logic compels that the forfeiture

---

4. Some jurisdictions refuse to enforce the forfeiture provision of a land contract if the proportion of the purchase price paid is so substantial that the amount forfeited would be an invalid "penalty" (see, e.g., *Hook v Bomar,* 320 F2d 536 [applying Fla law]; *Rothenberg v Follman,* 19 Mich App 383; *Morris v Sykes,* 624 P2d 681 [Utah]; *Johnson v Carman,* 572 P2d 371 [Utah]; *Behrendt v Abraham,* 64 Cal 2d 182; *Land Dev. v Padgett,* 369 P2d 888 [Alaska]).

provisions of the contract may be enforced. Similarly, where the vendee has paid a minimal sum on the contract and upon default seeks to retain possession of the property while the vendor is paying taxes, insurance and other upkeep to preserve the property, equity will not intervene to help the vendee (*Skendzel v Marshall, supra,* pp 240, 241). Such is not the case before us.

Accordingly, the judgment should be reversed, the motion should be denied and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.

DILLON, P. J., DENMAN, BOOMER and SCHNEPP, JJ., concur.

Judgment unanimously reversed, with costs, motion denied and matter remitted to Supreme Court, Onondaga County, for further proceedings, in accordance with opinion by DOERR, J.