In re Ronald N. BOOTH, Debra L. Booth, Debtors.

Bankruptcy No. 84–00001.

United States Bankruptcy Court, D. Vermont.

Sept. 14, 1984.

Joseph C. Palmisano, Barre, Vt., for debtors.

Kimberly B. Cheney, Montpelier, Vt., for Gaetan A. Yelle.

MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

This matter came on for hearing pursuant to a Motion by the Debtors, Ronald N. Booth and Debra L. Booth, to have Gaetan A. Yelle and Solange W. Yelle, adjudged in

contempt for violation of the automatic stay prescribed by § 362 of the Bankruptcy Code. The original Motion was directed against both Gaetan A. Yelle and Solange W. Yelle, but at the hearing held on August 21, 1984, the prior death of the co-debtor, Solange W. Yelle, was suggested to the Court. After the conclusion of the hearing Gaetan Yelle, through his attorney, requested the Court to take judicial notice of part of the Chapter 13 Plan filed by the Debtors to which the Debtors consented conditionally, and a hearing was held on this request on September 10, 1984. A separate Memorandum and Order has been entered on this request as well as on the Motions of the Debtor to reopen the hearing and for a continued hearing.

From the records in the case, the testimony adduced at the hearing, the exhibits received, the following facts have been established:

## FACTS

The Debtors, Ronald N. Booth and Debra L. Booth, filed their Petition for Relief under Chapter 13 of the Bankruptcy Code on January 3, 1984 with their Chapter 13 Statement showing that they were self-employed farmers and had operated a farm in Fort Covington, New York, and Williamstown, Vermont, from December, 1981 to the fall of 1983. Under paragraph numbered "13" where they were to list all real property owned by either of them at the date of the filing of the original Petition they indicate "None." Their Chapter 13 Plan was filed on January 5, 1984 and it incorporated the following statement:

"This Plan contemplates that certain preferences and equitable subordination actions and fraud actions shall be commenced forthwith by the Debtors and there should be substantial recovery to provide a 100% funding to the dividend payment, in addition to future earnings."

The Plan also recited under paragraph "3" that the following executory contracts of the debtor are rejected:

"1. Contract between Debtors and Gaetan A. Yelle and Solange M. Yelle dated October 30, 1981.

"2. Contract between Debtors and Aeon Sales, Inc. P.O. Box 8, Pottsdam, N.Y."

On October 30, 1981, Gaetan A. Yelle and Solange M. Yelle, his wife, as sellers and the debtors, Ronald Booth and Debra Booth, as purchasers entered into a written contract for the sale and purchase of certain real estate situated in the Town of Fort Covington, New York together with personal property consisting of 77 Holstein cows and farm machinery for a total purchase price of $430,000.00 of which the Debtors made payment of $45,000.00 upon signing of the agreement, $25,000.00 on or about June 1, 1982. The Debtors also paid the real estate broker a commission of $33,000.00 leaving a balance due of $327,000.00 payable in monthly installments fixed at $3,363.59 beginning on January 25, 1982. The Debtors were current in their monthly payments until they took off from the farm premises on December 17, 1983. As of that date, they had made total payments of $146,578.00.

As security for their then indebtedness of $352,000.00 evidenced by the contract of sale and purchase the Debtors granted to Gaetan A. Yelle and Solange M. Yelle a security interest in the 77 cows, machinery and all barn equipment located on Route 37 in the Town of Covington, Franklin County, New York, under a security agreement executed on October 30, 1981 with a financing statement describing the cows, machinery and equipment filed in the office of the Franklin County Clerk, Malone, New York, on November 2, 1981.

The contract of purchase and sale provided that it was to be governed by, construed, and enforced in accordance with the Laws of the State of New York.

The Debtors were obligated to maintain at least 77 cows on the farm. In the winter of 1981–2 or in the spring of 1982, Gaetan Yelle discovered that the Debtors were not maintaining this number of cows on the farm.

On or about December 16, 1983, the Debtors' attorney, Joseph C. Palmisano, Esquire, dispatched the following letter to Mr. and Mrs. Yelle:

"Please be advised that pursuant to the terms of your security agreement with the Booths, they are terminating the agreement effective, 7:00 A.M. December 17, 1983.

"The cattle, machinery and real estate are hereby returned to you effective December 17, 1983. You may take whatever action you deem necessary to secure your property as the Booths will no longer be responsible after today."

This letter was received by Mr. and Mrs. Gaetan A. Yelle within a few days after it was dated, and on December 17, 1983, sometime between 2:00 A.M. and 4:00 A.M., the Debtors left the farm premises described in the contract of purchase and sale and, in the process, removed all of the cattle which were on the property at that time to Williamstown, Vermont.

At that time, they had suspended payments under the contract and they have been in continuous default since that time.

On or about February 4, 1984, Gaetan A. Yelle and Solange M. Yelle as sellers entered into a contract with Larry Rathe and Margaret Rathe as purchasers of the same real estate which they had previously contracted to sell to the Debtors.

Previous to the execution of this contract with the Rathes, neither the Yelles nor their counsel, contacted the Debtors with respect to this contracted sale. At that time both Mr. and Mrs. Yelle and Mr. and Mrs. Rathe were aware of the pending bankruptcy petition filed by the Debtors. In addition, Gaetan Yelle and his attorney, James S. Brock, Esquire, attended the § 341 meeting for the examination of the Debtors on January 30, 1984.

## DISCUSSION

The Debtors contend that Gaetan A. Yelle, one of the sellers under the contract of purchase and sale (Solange W. Yelle being deceased) should be punished for con-tempt for violation of the automatic stay prescribed by § 362 of the Bankruptcy Code. This section provides that when a voluntary petition for relief is filed, it operates as a stay, applicable to all entities of, inter alia, (a)(3) any act to obtain possession of property of the estate or of property from the estate; (a)(4) any act to create, perfect or enforce any lien against property of the estate; (a)(5) any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case.

The Debtors contend that at the time of their filing the petition for relief they had an equitable interest in the Fort Covington, New York real estate by virtue of their payment of about $146,000.00 to the Yelles under the contract of purchase and sale. They apparently argue that when the Yelles entered into a contract for the sale of the same property to the Rathes with knowledge of the pending petition for relief filed by the Debtors they violated the automatic stay since this was an act to obtain property of the estate or of property from the estate. Their position is not tenable.

Under the Bankruptcy Code the filing of a petition for relief creates an estate. Such estate includes all legal or equitable interests of the debtor in property *at the commencement of the case.* § 541(a) and (b).

The Debtors did make substantial payments under the contract and, to that extent, could have up to 7:00 A.M. December 17, 1983 claimed an equitable interest in the real estate. It is generally held that a contract for the sale of land operates as an equitable conversion; the vendee's interest under the contract becomes realty and the vendor's interest under the contract constitutes personalty. In equity the purchaser is regarded as the owner subject to liability for the unpaid price and the vendor as holding the legal title in trust for him from the time a valid agreement for the purchase of land is entered into. This view of the estate of the purchaser is based on the maxim that "equity regards and treats as done what, in good conscience ought to

be done." Accordingly, in equity a contract for the sale of land is treated, for most purposes, precisely as if it had been specifically performed. Thus, as a vendee makes payments on a land contract the vendor becomes trustee for him of the legal estate, and he becomes in equity the owner of the land to the extent of payments made. A contract for the sale of land, part of the purchase price being paid and possession taken, vests in the vendee an equitable title in fee. The vendor is a trustee of the legal title for the vendee to the extent of his payment. 77 Am Jur 2d 478 § 317.

This equitable interest of the Debtors continued only until December 17, 1983 when they voluntarily by letter of their attorney dated December 16, 1983 terminated the agreement and returned the real estate to the Yelles effective at 7:00 A.M. of the following day notifying them to take whatever action they deemed necessary to secure their property "as the Booths will no longer be responsible after today." The Court construes this letter as a voluntary and unequivocal abandonment by the Debtors of any interest they had in the real estate. This conclusion is buttressed by the Debtors' Plan which they filed on January 5, 1984 which recited that it contemplates that "certain preferences and equitable subordination actions and fraud actions shall be commenced forthwith by the Debtors and there should be substantial recovery to provide 100% funding to the dividend payment in addition to future earnings."

The Plan makes no mention of any interest in real estate. In fact, this is specifically negated by paragraph 13 of the Chapter 13 Statement which recites "None" under "(a) Real Property—List all real property owned by either of you at date of filing of the original petition herein." Further, paragraph 3 of the Chapter 13 Plan required the Debtors to list the executory contracts of the Debtor which are rejected and they listed the contract between Debtors and Gaetan A. Yelle and Solange M. Yelle dated October 30, 1981. In sum, all of the statements made by the Debtors beginning with their attorney's letter of December 16, 1983 and continuing through the filing of their Chapter 13 Plan and their Chapter 13 Statement clearly establish an abandonment of their equitable interest in the real estate described in the contract of sale and purchase with the Yelles.

As the result of such abandonment the Debtors have lost whatever rights they previously had under the contract. 66 C.J. 730 § 292. This general rule is followed in New York, the laws of which govern the instant contract. See *Bean v. Walker* (Supreme Court, July 11, 1983) 95 A.D.2d 70, 464 N.Y.S.2d 895, 899 where the Court said:

"By our holding today we do not suggest that forfeiture would be an inappropriate result in all instances involving a breach of a land contract. If the vendee abandons the property and absconds, logic compels that the forfeiture provisions of the contract may be enforced."

There is even authority in New York that a purchaser forfeits his rights under a land contract upon default. See Albany Law Review article entitled "Forfeiture, The Anomaly of the Land Sale Contract," Volume 41 at page 80 as follows:

"The courts are in agreement that once the purchaser has defaulted he forfeits all he has paid on the contract. No legal action is necessary for the buyer's breach leaves title with the seller and unencumbers the land of all the contractual obligations. This remedy of forfeiture exists regardless of the seller's actual damages." Citing cases.

■ The Court concludes that as of the date of the filing of their Petition the Debtors had no interest in the real estate which was the subject matter of the contract of purchase and sale with the Yelles dated October 30, 1981. As a result there could be no violation of the automatic stay by Yelle since § 362 provides that the act constituting such violation must be against "property of the estate or of property from the estate."

■ After conclusion of the hearing on the Motion for Contempt the Debtors did

on September 11, 1984 file an Amendment to their Chapter 13 Statement specifically changing paragraph 13 which covers "property" to read as follows:

"Description and location of property | Equitable interest in farm of 300 acres and house and improvements located in the Town of Fort Covington, County of Franklin, New York"

In a supporting Memorandum filed on September 12, 1984 they contend that this Amendment is allowable under Bankruptcy Rule 1009 and they indicate that they seek to clarify and correct the oversight and inadvertent omission of the Debtors in not previously scheduling the Debtors' equitable interest in a 300-acre farm with house and improvements in the Debtors' Schedule of real property. They further state in their Memorandum that the Debtors' failure to schedule property results in such property not being administered in the estate and, as a result, such property remains part of the estate and is not abandoned. Citing 11 U.S.C. § 554(d); *In Re Medley*, 29 B.R. 84, at 86.

The Court agrees under Rule 1009 that the Debtors may amend their Chapter 13 Statement as a matter of course. However, such an amendment does not, by its self-serving nature, create a right in the Debtors which did not exist at the time of filing of the Petition for Relief.

It appears that the Debtors are trying to backtrack and undo their course of action beginning with their letter of December 16 to the Yelles which constituted an abandonment of their rights under the contract of sale and purchase. As of the date of the filing of the Petition they had already abandoned such equitable rights under the contract as may have existed. It was a fait accompli as of December 17, 1983 and any equitable rights claimed by the Debtors could not be resurrected merely by the filing of an Amendment at this late date. The Court is not persuaded by the Statement of the Debtors that the amendment is being made to clarify and correct, the oversight and inadvertent omission of the Debt-

or in not previously scheduling the Debtor's equitable interest in a 300 acre farm with house and improvements in the Debtor's schedule of real property.

The evidence is to the contrary and it establishes that all of the actions taken by the Debtors beginning with the letter of December 17, 1983 and continuing through the filing of the Plan and Chapter 13 Statement were clearly intended. Any claimed oversight or inadvertent omission of the Debtors' equitable interest in the property is clearly without foundation.

ORDER

Upon the foregoing,

IT IS ORDERED that the Motion of the Debtors to have Gaetan A. Yelle adjudged on contempt is DISMISSED WITH PREJUDICE.