**In re Alvin Charles WILCOX, Helen Jean Wilcox, Debtors.**

**Bankruptcy No. 95–13360.**

United States Bankruptcy Court, N.D. New York.

Aug. 19, 1996.

Thomas McCann, Malone, NY, for debtors.

John T. Snell, Plattsburgh, NY, for Wayne & Patricia Schoonmaker.

Mark Swimelar, Chapter 12 Trustee, Syracuse, NY.

### MEMORANDUM–DECISION AND ORDER

ROBERT E. LITTLEFIELD, Jr., Bankruptcy Judge.

These matters are before the court by way of objections filed by certain creditors to confirmation of the Second Amended Chapter 12 plan of Alvin Charles Wilcox and Helen Jean Wilcox (the "Debtors"). The court has core subject matter jurisdiction

over this matter pursuant to 28 U.S.C. § 157(b)(2)(L).

## FACTS

On September 8, 1995 Debtors filed their joint voluntary petition seeking relief under Chapter 12 of the Bankruptcy Code ("petition date").

During July 1993 Debtors entered into a written agreement entitled "Land Contract" with Wayne Schoonmaker and Patricia Schoonmaker ("Schoonmaker") wherein Debtors agreed to purchase from the Schoonmakers certain real property located in Clinton County, New York on which Debtors operate a family farm (the "Contract"). The purchase price for the property recited in the Contract is $175,000. Under the Contract, Debtors were to pay monthly "rent" (in the amount of $1,150) for the initial 24 months and Schoonmakers were to pay all real property taxes and insurance. Beginning on the 25th month of the Contract, the monthly payments made by Debtors (in the amount of $1,531.18) would be applied to reduction of principal and interest accruing on the purchase price and Debtors were to reimburse Schoonmakers for payment of property taxes and insurance for the 18–year balance of the Contract. Upon payment of the full purchase price, Schoonmakers were to deliver to Debtors a deed with marketable title.

Schoonmakers allege (and Debtors have not denied) that Debtors defaulted in monthly rental payment only two months into the Contract—which they contend is "executory" under Code § 365. Although Schoonmakers cite Debtors' failure to propose a cure of the alleged default under the Contract pursuant to Code § 1222(b)(6), they do not state the alleged amount in default and have not filed a proof of claim evidencing such debt.

Presently before the court is Debtors' second amended Chapter 12 plan ("plan") in which Debtors propose, among other things, to cramdown Schoonmaker's secured claim to $100,000 which will be amortized over 218 months at 3% interest, and to provide Schoonmakers with an unsecured claim in the amount of $75,000. Schoonmakers have filed objections to confirmation of the plan.

Primarily they argue that the Contract is an "executory contract" within the meaning of Code § 365 that must be either assumed or rejected and is not subject to cramdown.

## DISCUSSION

■ The court first notes that the United States of America ("Gov't") has filed an objection to confirmation of Debtors' plan based upon Debtors' failure to pay the Gov't the value of the collateral securing its claim. It is initially unclear whether Gov't objects to Debtors' Amended Plan presently before the court, or their original plan. Assuming that the Gov't objects to Debtors' instant Amended Plan, the Gov't fails to state or attach any evidence of: (1) the amount of its debt, (2) the documents giving rise to its security interest and its priority, (3) the items of personal property comprising its collateral, and (4) the value of the collateral. The Gov't's two-paragraph objection also does not recite or allege a payment to which it is entitled. While the court agrees with the Gov't's legal proposition that it is entitled to the present value of its allowed secured claim, in view of the foregoing there is little the court is able to do other than overrule the objection due to the Gov't's failure to meet its burden of making out a *prima facie* case.

■ Turning to the Schoonmaker's objection, the Debtors' ability to "cramdown" Schoonmaker's claim depends upon whether the Contract is more akin to a lease or a mortgage. Resolution of this issue turns upon state law. Code § 365 applies only to a "true" lease which is, of course, unexpired. See *In re PCH Associates*, 804 F.2d 193 (2d Cir.1986). In determining whether it is a "true" lease, the court is not so concerned with the labels used in the agreement as it is with "the economic substance of the transaction." *Id.* at 199.

■ Here, under the initial guidance of state law, the economic substance of the transaction appears to be that of a true lease for the first two years of the Contract. Clearly, with regard to the principal factors distinguishing rental from ownership of residential real property, i.e., rent, real property taxes and insurance, the parties intended

that their rights and obligations during the first two years did not differ significantly from the "ordinary landlord/tenant relationship." *Id.* at 200. The monthly rental payment is separately recited and runs for a stated period (July 1993 to June 1995). As a result, Code § 365 applies if the lease portion is found to be "unexpired." If Debtors failed to pay rent for 22 of the first 24 months of the Contract (as alleged by Schoonmakers), the amount necessary to cure the unexpired lease would be $25,300.[1] If the lease portion is not unexpired, and therefore not subject to Code § 365, Schoonmakers will be entitled to a general unsecured claim in the same amount. However, as noted above, (other than Schoonmaker's bare allegation) there is no evidence of record bearing upon the extent and exact amount of the Debtors' payment default during the first 24 months of the Contract.[2]

■ However, the lease portion of the Contract terminated and the nature of the Contract converted to that of a mortgage by its own terms commencing July 1995. After the two year "rental" period, the Debtors became responsible for payment of real property taxes and insurance. In addition, commencing July 1995 their monthly payments changed under the Contract from "rental" to "installment" payments and increased to reflect the amortization of the purchase price over 18 years at 8% interest. More importantly, the Contract provides that the installment payments were to be applied to the purchase price until satisfied at which time Schoonmakers were to deliver the deed. "Where sale of real property is evidenced by contract only and the purchase price has not been paid and· is not to be paid until some future date in accordance with the terms of the agreement, the parties occupy substantially the position of mortgagor and mortgagee at common law." *Bean v. Walker,* 95 A.D.2d 70, 73, 464 N.Y.S.2d 895 (N.Y.App. Div.1983). Therefore the court concludes that commencing July 25, 1995 and continuing for the next 18 years, the nature of the

Contract is that of a mortgage. It follows also that the mortgage portion of the Contract is subject to the Debtors' ability to cramdown a secured claim pursuant to Code §§ 1222(b)(2) and 1225(a)(5)(B).

■ Moreover, while the court need not reach the question, it appears that the lease portion may be severable from the mortgage portion of the Contract. Setting forth the terms of a transaction in one document is not conclusive proof that the parties intended to make only one contract. See 3A *Corbin On Contracts* § 696 at 291–92 (1960). The nature and purpose of the lease portion is as different from the mortgage portion as leasing is different from owning real property. Also the consideration for each portion of the Contract is separately recited and labelled either as "rent" or "installment" payments. There also do not appear to be any promises in each portion that are interrelated. The rights and obligations of the parties are separate and defined for each portion of the Contract. See *In re Gardinier, Inc.,* 831 F.2d 974, 976 (11th Cir.1987). Accordingly, the first two year lease portion may be severable from the mortgage portion of the Contract.

However, the court need not reach the question of severability because, if severable, the lease portion is no longer executory and, if it is not severable, the Contract as a whole is more akin to a mortgage (see *supra*) and therefore subject to the Code's so-called cramdown provisions.

■ The lease portion of the Contract is no longer "unexpired" and therefore is not subject to assumption or rejection under Code § 365. In order for a contract to be considered executory, there must be significant performance remaining on both sides. See e.g., *In re RLR Celestial Homes, Inc.,* 108 B.R. 36 (Bankr.S.D.N.Y.1989). Based upon the record before this court, the Schoonmakers have fully performed their obligations under the lease portion of the Contract. By providing Debtors with the use

---

1. Monthly rental payment multiplied times the number of months alleged in default during the first two years of the Contract ($1,150 × 22 months = $25,300).

2. If the amount of Debtors' default during the first 24 months of the Contract is not resolved through stipulation, the court may require further evidentiary hearing.

and occupancy of the property during the two years of the lease (which elapsed after June 1995), they do not have any further material performance due thereunder. Accordingly, the lease portion is not unexpired or executory for the purpose of Code § 365. Schoonmakers have not objected to the proposed value of the real property or the interest rate on their secured claim proposed by Debtors. Although Debtors propose an interest rate of 3% on the Schoonmaker's secured claim, this court has held that allowed secured claim holders are entitled to receive the present value of their secured claim, as of the effective date of the plan. See *In re Dingley,* 189 B.R. 264 (Bankr.N.D.N.Y.1995). Clearly, the interest rate of 3% proposed by Debtors in their second amended plan is insufficient to provide present value in accordance with Code § 1225(a)(5)(B)(ii). As a result, the court cannot confirm Debtors' instant plan.

Based upon the foregoing, it is hereby **ORDERED** that:

1. Confirmation of Debtors' Second Amended Chapter 12 Plan is hereby **denied without prejudice;**

2. Within thirty (30) days from the date of this Order, Debtors shall file and serve (by regular first class mail) on the Chapter 12 Trustee, U.S. Attorney, Clinton County District Attorney and Schoonmakers a third plan amended in accordance herewith and shall serve on all creditors written notice of a confirmation hearing regarding their third amended plan together with a deadline for objections to said plan.

3. Within thirty (30) days from the date of this Order, Schoonmakers shall file any claim(s) in this case; and

4. In the event that Debtors fail to comply with ¶ 2 above, Trustee shall submit a proposed order dismissing Debtors' case without prejudice.