RTT Holdings, LLC v Nacht (2022 NY Slip Op 03916)

RTT Holdings, LLC v Nacht

2022 NY Slip Op 03916

Decided on June 15, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 15, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
CHERYL E. CHAMBERS
JOSEPH A. ZAYAS
LARA J. GENOVESI, JJ.

2017-11585
 (Index No. 60680/13)

[*1]RTT Holdings, LLC, appellant, 
v
Lawrence Nacht, as personal representative of the estate of Pearl Nacht, respondent.

Windels Marx Lane & Mittendorf, LLP, New York, NY (James Tracy and Mark Slama of counsel), for appellant.

DECISION & ORDER
In an action, inter alia, to recover possession of real property, the plaintiff appeals from an order of the Supreme Court, Suffolk County (William B. Rebolini, J.), dated December 11, 2015. The order, insofar as appealed from, denied those branches of the plaintiff's motion which were for a judgment of possession and the issuance of a warrant ejecting Pearl Nacht from the subject premises, and, in effect, granted those branches of the cross motion of Pearl Nacht which were to cancel a certain deed recorded on March 15, 2012, against the subject property, and, in effect, to dismiss the complaint, and thereupon directed the Clerk of the County of Suffolk to cancel the deed recorded on March 15, 2012.
ORDERED that the order is modified, on the law, by deleting the provision thereof, in effect, granting that branch of the cross motion of Pearl Nacht which was to cancel the deed recorded on March 15, 2012, and thereupon directing the Clerk of the County of Suffolk to cancel that deed, and substituting therefor a provision denying that branch of the cross motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.
Pearl Nacht (hereinafter the decedent) refinanced her home in 2006 by borrowing the sum of $210,000 from the plaintiff, payable within one year, at an interest rate of 12%. The loan was secured by a mortgage on the decedent's real property in Suffolk County. The plaintiff alleged that the decedent defaulted on the loan by failing to make the principal payment of $210,000, which became due on July 1, 2007. That year, the plaintiff commenced a foreclosure action, which was voluntarily discontinued pursuant to a stipulation of settlement entered into between the parties' attorneys on June 4, 2010 (hereinafter the 2010 stipulation).
Pursuant to the 2010 stipulation, the decedent was permitted to remain in her home for two years, until June 1, 2012, so long as she paid monthly interest to the plaintiff on the mortgage loan at a reduced rate of 5% per annum. The decedent also agreed to pay the plaintiff a lump sum of $25,000, which included advance interest payments, at the reduced rate, until May 31, 2011. The decedent agreed to deliver to the plaintiff a deed to her property, as well as a confession of judgment in the amount of $295,050. The 2010 stipulation also allowed the decedent to repay the plaintiff in full at any time, in which case the confession of judgment and deed "shall be promptly returned" to the decedent. In the event of a payment default or other listed event of default, however, the 2010 stipulation provided the plaintiff with the right to elect its remedy, including recording the deed or [*2]filing the confession of judgment. It is undisputed that the decedent made the initial $25,000 lump sum payment required under the 2010 stipulation, and continued making monthly interest payments thereafter from July 2011 until January 2012.
The plaintiff declared the decedent in default under the 2010 stipulation in February 2012. Thereafter, on March 15, 2012, the plaintiff recorded the deed previously signed by the decedent against the subject property. On July 18, 2012, the plaintiff sent the decedent a 10-day notice to quit the subject property, on the ground that she had failed to comply with the terms of the 2010 stipulation. The plaintiff subsequently commenced this action in 2013, inter alia, to recover possession of the subject property.
On June 4, 2013, the plaintiff's managing member, James J. Thomas, executed an affidavit averring, inter alia, that, as a result of the decedent's default, the plaintiff was owed the sum of $295,050 plus unpaid interest from and after May 31, 2011, and requesting the Clerk of the Supreme Court to enter a judgment by confession against the decedent. Thomas's affidavit failed to disclose the fact that the plaintiff had previously purported to transfer the subject property to itself in March 2012. The Clerk of the Supreme Court entered the judgment by confession on June 4, 2013.
The following month, the plaintiff, relying on the March 15, 2012 deed, moved for an order granting it immediate possession of the subject property and directing the issuance of a warrant to remove the decedent therefrom. In a supporting affidavit from James J. Thomas, sworn to on July 23, 2013, Thomas averred that the plaintiff was the record owner of the subject property. The affidavit made no mention of the judgment by confession entered against the decedent the previous month.
In April 2014, the parties entered into a "Settlement Agreement and General Release" (hereinafter the 2014 settlement) to resolve this action. Among other things, the 2014 settlement required the decedent to pay $235,000 in order to get the subject property back from the plaintiff. The decedent was also required to pay $30,000 upon signing the 2014 settlement, and the remaining $205,000 by June 30, 2014. The decedent could extend the payment date until August 29, 2014, upon payment of an additional $20,000, with the understanding that all payments made by her would be forfeited in the event of a default. As part of the 2014 settlement, the decedent consented to the entry of a judgment of possession in favor of the plaintiff, which would be vacated only in the event the decedent paid the full amount owed. The decedent also consented to the issuance of a warrant of removal, which would be stayed pursuant to the terms of the agreement.
As part of the 2014 settlement, the plaintiff gave the decedent a general release in the following terms: "In exchange for the promises contained in this Agreement, Plaintiff waives, releases and forever discharges, and agrees to the fullest extent permitted by law that it will not in any manner institute, prosecute, or pursue, any and all complaints, claims, charges, demands, suits, actions, or causes of action, whether in law or in equity, which it asserts or could assert, at common law or under any statute, rule, regulation, order, or law, whether federal, state, or local, or on any grounds whatsoever that Plaintiff may have against [the decedent] or her heirs, executors, administrators, successors and assigns."
The 2014 settlement also contained a merger clause stating that it constituted "the complete understanding between the Parties and supersede[d] any and all prior agreements, promises, or inducements, no matter its or their form, concerning its subject matter." Furthermore, the 2014 settlement contained a severability clause expressing the parties' intent that the invalidity of any provision of the agreement "shall not in any way or manner affect the enforceability of the other provisions."
It is undisputed that the decedent paid the initial $30,000 pursuant to the terms of the 2014 settlement, and made subsequent payments of $20,000 on June 30, 2014, $10,000 on August 22, 2014, and $10,000 on September 5, 2014.
In furtherance of the 2014 settlement, the Supreme Court issued an order dated April 9, 2014, inter alia, directing the Clerk of the Supreme Court to enter a judgment of possession in favor of the plaintiff. However, upon realizing that the Clerk of the Supreme Court had previously entered a judgment by confession against the decedent on June 4, 2013, the court, sua sponte, issued a further order dated June 26, 2014, vacating the April 9, 2014 order.
The plaintiff thereafter moved to vacate the June 4, 2013 judgment by confession, and asked the Supreme Court once again to enter a judgment of possession in its favor and to issue a warrant ejecting the decedent from the premises. The decedent, pro se, opposed the motion, and cross-moved, inter alia, to cancel the March 15, 2012 deed and, in effect, to dismiss the complaint. She contended, among other things, that the plaintiff was not entitled to the relief sought because it did not own the subject property, and that the March 15, 2012 deed merely created a security interest. She also argued that the original mortgage loan as well as all subsequent transactions between the parties were fraudulent and unconscionable.
In an order dated December 11, 2015, the Supreme Court granted that branch of the plaintiff's motion which was to vacate the June 4, 2013 judgment by confession, but otherwise denied the motion. The court also determined, inter alia, that the 2010 stipulation was unconscionable. Upon such determination, the court, in effect, granted those branches of the decedent's cross motion which were to cancel the March 15, 2012 deed and, in effect, to dismiss the complaint, and thereupon directed the Clerk of the County of Suffolk to cancel the March 15, 2012 deed. The plaintiff appeals.
As a threshold matter, the decedent correctly asserted, before the Supreme Court, that the March 15, 2012 deed never conveyed legal title to the plaintiff, but merely created a security interest in the subject property. "A deed conveying real property, which, by any other written instrument, appears to be intended only as a security in the nature of a mortgage, although an absolute conveyance in terms, must be considered a mortgage; and the person for whose benefit such deed is made, derives no advantage from the recording thereof, unless every writing, operating as a defeasance of the same, or explanatory of its being desired to have the effect only of a mortgage, or conditional deed, is also recorded therewith, and at the same time" (Real Property Law § 320).
Here, the 2010 stipulation clearly recited the existence of a prior debt, authorized the decedent to continue occupying the property subject to certain terms and conditions, obligated her to maintain the property, and, most importantly, expressly authorized her to "retain ownership of the subject [p]roperty" (emphasis added) upon full repayment of the debt. Contrary to the plaintiff's contention, such characteristics bear all the hallmarks of a security interest—not an outright conveyance of legal title (see Wallace v McCabe, 41 Misc 2d 483, 485 [Sup Ct, Nassau County]). Indeed, "if an owner purports to convey title to real property as security for a loan; the conveyance is deemed to create a lien rather than an outright conveyance, even though the deed was recorded" (Bean v Walker, 95 AD2d 70, 72).
Since the plaintiff did not hold legal title to the property, it follows that it was not entitled to the entry of a judgment of possession, or the issuance of a warrant ejecting the decedent from the subject premises (see e.g. Merkos L'Inyonei Chinuch, Inc. v Sharf, 59 AD3d 408, 410; Jannace v Nelson, L.P., 256 AD2d 385, 385-386), and dismissal of the complaint was warranted on that ground.
The Supreme Court erred, however, in determining that the 2010 stipulation was unconscionable, and in directing the cancellation of the March 15, 2012 deed on that ground. "Stipulations of settlement are favored by the courts and are not to be lightly set aside, especially where . . . the party seeking to vacate the stipulation was represented by counsel" (Kelley v Chavez, 33 AD3d 590, 591 [citation omitted]). An unconscionable agreement has been described as one in which "no [person] in his [or her] senses and not under delusion would make on the one hand, and [which] no honest and fair [person] would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any [person] of common sense" (Christian v Christian, 42 NY2d 63, 71 [citation and internal quotation marks omitted]). "A [*3]determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made" (Gillman v Chase Manhattan Bank, 73 NY2d 1, 10). No such showing was made here.
Here, the Supreme Court acknowledged that it was troubled by the plaintiff's attempt to transfer the subject property to itself while also seeking entry of a judgment by confession against the decedent in the full amount of the debt. While such actions call into question the plaintiff's good faith in the performance of the 2010 stipulation, they do not cast doubt on the intrinsic fairness of the agreement itself—which we do not read as authorizing the plaintiff to obtain both a deed to the subject property and a judgment against the decedent in the amount of $295,050. Moreover, it cannot be said that the decedent received no benefit from the 2010 stipulation; indeed, her time to repay the underlying debt was extended until 2012, and she was charged only 5% interest during that time, rather than the 12% rate stated in the 2006 note.
Since the 2010 stipulation was not unconscionable, the Supreme Court had no reason to cancel the March 15, 2012 deed—which, in any event, did not transfer legal ownership of the subject property to the plaintiff, but, at most, created a security interest in the plaintiff's favor. Accordingly, we modify the order appealed from by deleting the provision thereof, in effect, granting that branch of the decedent's cross motion which sought such relief and directed the cancellation of the March 15, 2012 deed.
BARROS, J.P., CHAMBERS, ZAYAS and GENOVESI, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court