Pelletier v Morgan (2023 NY Slip Op 02044)

Pelletier v Morgan

2023 NY Slip Op 02044

Decided on April 20, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 20, 2023

534732 
[*1]Nicole Pelletier, Respondent,
v
Robert J. Morgan et al., Appellants.

Calendar Date:February 22, 2023

Before:Garry, P.J., Egan Jr., Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Coughlin & Gerhart, LLP, Ithaca (Dirk A. Galbraith of counsel), for appellants.
The Crossmore Law Office, Ithaca (Edward Y. Crossmore of counsel), for respondent.

Egan Jr., J.
Appeal from an order of the Supreme Court (Joseph A. McBride, J.), entered January 21, 2022 in Tompkins County, which denied defendants' motion for partial summary judgment dismissing the amended complaint.
In 2017, plaintiff purchased the rental home where she had been residing, a second dwelling and approximately 30 acres of property (hereinafter collectively referred to as the residential property) in the Town of Caroline, Tompkins County from defendant Morgan Shedlock LLC and defendant Robert J. Morgan, the managing member of Morgan Shedlock, for $665,000.[FN1] The terms of that purchase were ultimately embodied in a November 2017 land contract, replacing a land contract that was executed in October 2017 as well as other agreements between plaintiff, Morgan and/or Morgan Shedlock, in which plaintiff agreed to pay the outstanding balance of the purchase price, with interest, over 20 years in monthly installments of $4,764.27. Morgan Shedlock committed to conveying legal title of the residential property to plaintiff at the time the principal balance and accrued interest were paid. If plaintiff defaulted, Morgan Shedlock was entitled to accelerate the debt and then, if plaintiff failed to make full payment, retain her prior payments as rent and commence eviction proceedings against her.
Plaintiff missed several monthly payments, which allegedly prompted defendants to make unsuccessful efforts from late 2017 onward to either evict her from the residential property or intimidate her into leaving it. Plaintiff and Morgan, acting for himself and Morgan Shedlock, then executed a document, dated May 28, 2019, in which they agreed to terminate the October 2017 land contract, as opposed to the November 2017 land contract, and to waive any claims arising out of either the October 2017 land contract or plaintiff's occupation of the residential property. Plaintiff further committed to vacating the residential property by June 30, 2019, after which Morgan and Morgan Shedlock would "be entitled to possession thereof."
Plaintiff commenced this action in 2020 seeking, among other things, rescission of the 2019 termination agreement, as well as damages and other relief relating to the November 2017 land contract and defendants' efforts to expel her from the residential property. She then obtained leave to serve an amended complaint asserting a new, fifth cause of action seeking rescission of the 2019 termination agreement and damages due to violations of Real Property Law § 265-a, a statute enacted as part of the Home Equity Theft Prevention Act (L 2006, ch 308). Defendants answered the amended complaint and then moved for partial summary judgment dismissing the fifth cause of action, arguing that the 2019 termination agreement was not covered by the protections of Real Property Law § 265-a. Supreme Court denied the motion, and defendants appeal.
We affirm. Real Property Law § 265-a was enacted in response to the Legislature's concern "that homeowners who [*2]are in default on their mortgages or in foreclosure may be vulnerable to fraud, deception, and unfair dealing by home equity purchasers" (Real Property Law § 265-a [1] [a]). The statute largely deals with those vulnerabilities by placing restrictions upon the content, execution and enforcement of any "[c]overed contract," a term defined, at all relevant times, to include any arrangement "between an equity purchaser and equity seller which . . . is incident to the sale of a residence in foreclosure; or . . . is incident to the sale of a residence in foreclosure or default where such contract, agreement or arrangement includes a reconveyance arrangement" (Real Property Law § 265-a [2] [c]; see Real Property Law § 265-a [3]-[7]). Equity sellers are further granted the right to rescind "[a]ny transaction involving residential real property in foreclosure or, where applicable, default" where those restrictions are materially violated, as well as the right to sue for damages and equitable relief arising out of any violation (Real Property Law § 265-a [8] [a]; see Real Property Law § 265-a [9]). As for what constitutes a foreclosure or a default, the statute defines a foreclosure as occurring when "an active lis pendens [has been] filed in court pursuant to [the mortgage foreclosure procedures set forth in RPAPL article 13] against the subject property" or when "the subject property is on an active property tax lien sale list" (Real Property Law § 265-a [2] [g]). A default, in contrast, occurs when an "equity seller is two months or more behind in his or her mortgage payments" (Real Property Law § 265-a [2] [d]).
Turning to the parties' interactions, although plaintiff did not grant a purchase money mortgage to defendants, it is well settled that the execution of the November 2017 land contract would "ordinarily vest[ ] equitable title to the property in [plaintiff], who
. . . cannot be divested of that title except by proper foreclosure proceedings" (Madero v Henness, 200 AD2d 917, 918 [3d Dept 1994], lv dismissed 83 NY2d 906 [1994]; see Cloke v Findlan, 165 AD3d 1545, 1549-1550 [3d Dept 2018]; Call v La Brie, 116 AD2d 1034, 1035 [4th Dept 1986]; Bean v Walker, 95 AD2d 70, 74 [4th Dept 1983]).[FN2] To put it differently, the November 2017 land contract placed plaintiff in "the same position as [a] mortgagor at common law," and she acquired equitable title to the property, an equitable lien in the amount of her payments, and legal title held in trust by the property vendor and subject to that lien (Bean v Walker, 95 AD2d at 74; see Cloke v Findlan, 165 AD3d at 1549).
In view of the foregoing, and following the Legislature's directive to liberally construe the provisions of Real Property Law § 265-a in order to achieve its objective of "preserv[ing] and protect[ing] home equity for" homeowners (Real Property Law § 265-a [1] [d]; see Real Property Law § 265-a [15]), we reject defendants' argument that the 2019 termination agreement was not "between an equity [*3]purchaser and equity seller" as required to constitute a covered contract under the statute (Real Property Law § 265-a [2] [c]). As the November 2017 land contract granted plaintiff equitable title and legal title in trust of the residential property, she was a "property owner or homeowner at the time" of the 2019 termination agreement and an equity seller (Real Property Law § 265-a [2] [f]; see Real Property Law § 265-a [2] [h]), while the efforts of Morgan and Morgan Shedlock to terminate that agreement and recover her ownership interest rendered them equity purchasers (see Real Property Law § 265-a [e]).[FN3] Plaintiff further alleges that the 2019 termination agreement was executed after she had failed to make payments for "two months or more" under the November 2017 land contract, which constituted a default within the meaning of the statute (Real Property Law § 265-a [2] [d]). It follows from that default, in conjunction with the fact that the 2019 termination agreement seemingly contemplated a cancellation of the November 2017 land contract that would result in the reconveyance of plaintiff's "legal or equitable title to all or part of the property" to Morgan and Morgan Shedlock, that the 2019 termination agreement constituted a covered contract to which the protections of Real Property Law § 265-a applied (Real Property Law § 265-a [2] [i]; see Real Property Law § 265-a [2] [c] [ii]). Thus, as defendants failed to meet their initial burden on their motion for summary judgment of showing that Real Property Law § 265-a did not apply to the 2019 termination agreement, Supreme Court properly denied their motion "regardless of the sufficiency of the opposing papers" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; accord Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]).
Finally, defendants' argument regarding the retroactive impact of an amendment to the definition of a covered contract that took effect after the execution of the 2019 termination agreement, to the extent that it is properly before us, is academic in view of our conclusion that the 2019 termination agreement constituted a covered contract under the original definition (see Real Property Law § 265-a [2] [c], as amended by L 2019, ch 167). Their remaining arguments have been examined and lack merit.
Garry, P.J., Aarons and Ceresia, JJ., concur; Reynolds Fitzgerald, J., not taking part.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: The parties also entered into a transaction in which plaintiff purchased a stable and surrounding acreage near the residential property. This appeal solely involves a claim related to the purchase of the residential property, however, and we focus upon that aspect of the parties' dealings.

Footnote 2: Defendants do not attempt to argue that plaintiff should not be vested with equitable title under the facts of this case, such as that she had "minimal equity in the property" (Lind v Lind, 203 AD2d 696, 698 [3d Dept 1994], lv denied 84 NY2d 803 [1994]; see Gerder Servs. v Johnson, 109 Misc 2d 216, 218 [Sup Ct, Erie County 1981]).

Footnote 3: Although the statute defines a property owner or homeowner as a "record title owner[ ]"(Real Property Law § 265-a [2] [h]), and the record does not suggest that the November 2017 land contract was recorded, defendants will not be heard to deny the truth of a property interest they conveyed to plaintiff in that contract (see Congregation Yetev Lev D'Satmar v 26 Adar N.B. Corp., 219 AD2d 186, 191 [2d Dept 1996], lv denied 88 NY2d 808 [1996]; Kraker v Roll, 100 AD2d 424, 431 [2d Dept 1984]).